375 N.W.2d 509 (1985)
In the Matter of the PROPOSED DISCIPLINARY ACTION AGAINST the DENTIST LICENSE OF Roger W. SCHULTZ, DDS, License No. 7280.
No. C9-85-761.
Court of Appeals of Minnesota.
October 15, 1985.
*511 Owen L. Sorenson, St. Paul, for appellant.
Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Paul G. Zerby, Sp. Asst. Atty. Gen., Minneapolis, for respondent.
Heard, considered, and decided by POPOVICH, C.J., and SEDGWICK and LANSING, JJ.

*512 OPINION
SEDGWICK, Judge.
Roger Schultz, DDS, appeals by writ of certiorari from an order of the Minnesota Board of Dentistry suspending him indefinitely from the practice of dentistry and imposing conditions for reinstatement. Schultz contends that the Board's suspension of his license is illegal, its findings are unsupported by substantial evidence, and the findings do not warrant discipline.
We affirm.

FACTS
Roger Schultz has been licensed to practice dentistry in Minnesota since 1967. The Board of Dentistry initiated proceedings to determine whether his license should be revoked, suspended, limited, modified or conditioned because he violated Minn.Stat. § 150A.08 (Supp.1983) and Minn.R. 3100.6200. A 12 day hearing was held before an administrative law judge. The administrative law judge concluded that although a number of the charges were not proved, Schultz violated the statute and rule in 16 separate instances. He recommended that the Board take disciplinary action. He specifically noted that he did not believe Schultz in most instances where the testimony was in conflict.
The Board adopted most of the findings made by the administrative law judge and made additional findings. It adopted most of the administrative law judge's conclusions that there were violations of the statute and rule but rejected several. Based on its additional findings, the Board concluded there were violations in addition to those found by the administrative law judge. These additional violations mainly relate to incompetence in recording diagnosis and treatment, unwarranted charges, and deviations from the accepted standards of practice. In total the Board found 20 separate violations.
The Board indefinitely suspended Schultz's license to practice dentistry. It further ordered that Schultz could petition for reinstatement but no sooner than April 8, 1986. Under the Board's order, Schultz has the burden of proving that his petition should be granted. At a minimum, he must receive a psychiatric evaluation within 30 days of his suspension, comply with a treatment plan if one is recommended, be evaluated by a psychiatrist 60 days immediately preceding his petition, successfully complete courses in dental ethics and oral diagnosis, make a report about his intervening activities, and write a paper about the application of dental ethics to his new dental practice.
Schultz seeks review of the suspension.

ISSUES
1. Did the Board comply with statutory requirements when suspending Schultz?
2. Does the conduct, as stated in the findings, warrant discipline?

ANALYSIS

I.
Schultz contends that the discipline imposed by the Board and the Board's Conclusion of Law 5 clearly suggest that it was relying primarily upon Minn.Stat. § 150A.08, subd. 1(8), as the ground for suspending him. This statute provides that the Board may suspend a dentist if any physical, mental, emotional, or other disability adversely affects his or her ability. See Minn.Stat. § 150A.08, subd. 1(8). He further contends that if this ground is used without first having probable cause to believe that his mental or emotional condition adversely affects his performance and without obtaining an expert opinion, the suspension is unlawful. Schultz rests his argument upon two bases. First, one of the Board's conclusion of law states that:
Respondent has demonstrated over the years a course of dishonest behavior, charging for services not rendered, performing unnecessary services, engaging in sexually inappropriate touching of patients, perpetuating fraud upon patients and third party payers, displaying threatening behavior towards his colleagues and others, and either unwillingness or *513 inability to engage in minimal acceptable documentation required for safe practice. The Board concludes that such behavior evidences a mental, emotional, or other disability adversely affecting his ability to perform dental services.
Conclusion of Law 5 (emphasis added). Second, as a condition of reinstatement, Schultz must consult with a psychiatrist within 30 days of his suspension, comply with a treatment plan if one is recommended, and be evaluated by a psychiatrist 60 days immediately preceding his petition.
We are unpersuaded by Schultz's argument. The suspension of a license to practice dentistry is governed by Minn. Stat. § 150A.08, subd. 1. The Board may suspend a license:
upon any of the following grounds:
(1) Fraud or deception in connection with the practice of dentistry * * *;
* * * * * *
(6) Conduct unbecoming a person licensed to practice dentistry * * * or conduct contrary to the best interest of the public, as such conduct is defined by the rules of the board;
* * * * * *
(8) Any physical, mental, emotional, or other disability which adversely affects a dentist's * * * ability to perform * * *;
* * * * * *
(11) Employing, assisting, or enabling in any manner an unlicensed person to practice dentistry * * *.
Minn.Stat. § 150A.08, subd. 1 (emphasis added). Minn.R. 3100.6200 defines "[c]onduct unbecoming a person licensed to practice dentistry * * * or conduct contrary to the best interests of the public * * *."
The Board concluded that Schultz violated the statute in 20 instances. Its conclusions were specific and based upon specific findings. It found three violations of subdivision 1(1) and one violation of subdivision 1(11). The remainder were violations of subdivision 1(6) and the rule. It made no conclusion that Schultz violated subdivision 1(8) and no finding which would support such a conclusion. Its Conclusion of Law 5 is one of 45 and, unlike the conclusions relating to violations, it draws no conclusion that Schultz violated a specific statutory section.
A suspension may be made on any one of 13 grounds. The Board relied on three different grounds but not upon mental or emotional disability. Its reliance was proper.
Schultz also contends that there is no evidence that there is probable cause to believe that he has any mental, emotional or other disability which adversely affects his ability to perform as a dentist. Under Minn.Stat. § 150A.08, subd. 5, the Board is mandated to "direct the dentist * * * to submit to a mental or physical examination or a chemical dependency assessment" if it has probable cause to believe that the dentist has a condition described in Minn.Stat. § 150A.08, subd. 1(8). In its Conclusion of Law 5, the Board listed conduct which it concluded evidences a mental, emotional, or other disability which affects Schultz's ability to perform as a dentist. Based on this conclusion it ordered psychiatric evaluations as a condition for reinstatement.
Although we are dealing with a civil matter, we find the following test of probable cause in a criminal context to be useful:
[W]hether the objective facts are such that under the circumstances "a person of ordinary care and prudence [would] entertain an honest and strong suspicion" that a crime has been committed.
State v. Johnson, 314 N.W.2d 229, 230 (Minn.1982) (quoting State v. Carlson, 267 N.W.2d 170, 173 (Minn.1978)). "This standard is a flexible common sense one." State v. Skoog, 351 N.W.2d 380, 381 (Minn. Ct.App.1984) (citations omitted). The Board's findings outlined in Conclusion 5 cover a wide range of inappropriate conduct that support an honest and strong suspicion that Schultz has a mental, emotional, or other disability which adversely affects his ability to perform as a dentist. The findings outlined in Conclusion 5 justify a conclusion that there is probable cause.

*514 II.
During the administrative process, Schultz took the position that the Board must prove its claims by a preponderance of the evidence. On appeal he argues the burden of proof is by clear and convincing evidence.
The general burden of proof for administrative hearings is preponderance of the evidence, unless the substantive law provides a different burden or standard. Minn.R. 1400.7300, subp. 5 (1983). Because the substantive law provides no different standard, the proof is by a preponderance of the evidence. See also In re Polk, 90 N.J. 550, 449 A.2d 7 (1982).
Schultz challenges the violations found by the Board. In some cases he contends that the findings are not supported by substantial evidence and in others he contends that his conduct does not warrant discipline.
A. Schultz's hygienist took x-rays of B.K. and informed her that she had a number of cavities, that one required urgent treatment, and that her wisdom teeth should be taken out. The Board concluded that one who reviews x-rays, determines the presence of cavities, informs the patient, and recommends urgent treatment is diagnosing and recommending treatment. Schultz was found to have violated Minn. Stat. § 150A.08, subd. 1(11), ("[e]mploying, assisting, or enabling in any manner an unlicensed person to practice dentistry").
Contrary to Schultz's arguments, subdivision 1(11), unlike subdivision 1(13), is self-contained and does not require a repeated pattern of conduct. It requires only "enabling in any manner" an unlicensed person to practice dentistry. The Board's conclusion that the hygienist's actions constituted diagnosis and thus "the practice of dentistry" was within its expertise.
B. The Board described eleven instances of erroneous and inadequate recordkeeping with respect to both diagnosis and treatment. It concluded Schultz grossly deviated from the minimal standards required of a professional in maintaining adequate records, thereby violating subdivision 1(6) and Minn.R. 3100.6200B. Schultz admits the instances but argues that they have been taken out of context and blown out of proportion. We can find no basis for this claim. The Board is uniquely suited to make the determination whether the instances rise to the level of gross incompetence in the practice of dentistry. Cf. Reyburn v. Minnesota State Board of Optometry, 247 Minn. 520, 78 N.W.2d 351 (1956) ("`Unprofessional conduct' is conduct which violates those standards of professional behavior which through professional experience have become established * * *. In establishing * * * such standards, every member of the profession should be regarded as an expert."); Manufactured Housing Institute v. Pettersen, 347 N.W.2d 238 (Minn.1984) (deference is to be shown to agency expertise, restricting judicial functions to a narrow area of responsibility, lest the court substitute its judgment for that of the agency). Its assessment of sanctions is not a factual finding but the exercise of a discretionary grant of power. See In re Haugen, 278 N.W.2d 75, 80 n. 10 (Minn.1979). We find no abuse of discretion.
C. Schultz provided services to a Vietnamese family sponsored by a church. The Board found that as a medical provider Schultz agreed to accept Medicaid reimbursement as full payment for covered services but he repeatedly billed the recipient family and their church as well as Medicaid. Both the patient and the church paid for part of the services. The Board concluded Schultz violated Minn.R. 3100.6200 by engaging in personal conduct which brings discredit to the profession of dentistry. Schultz argues that his conduct was nothing more than an honest effort to collect the fee for which he contracted.
The Board did not adopt the administrative law judge's findings that the family was initially ineligible for medical assistance and it was unclear when they became eligible and whether they maintained eligibility. The Board substituted another finding *515 detailing billings made by Schultz and payments received but did not address the uncertainty noted by the administrative law judge. Because the church and patient could have paid for services provided during a period of ineligibility, the Board's findings do not support the conclusion that Schultz was engaging in personal conduct which brings discredit to the profession.
D. Schultz's hygienist donated her services to the Vietnamese family. Schultz submitted bills to medical assistance for the services performed by the hygienist. Medical assistance paid for the services. The Board concluded that Schultz violated Minn.Stat. § 150A.08, subd. 1(1) and (6) and Minn.R. 3100.6200H and I. Schultz argues that the conduct does not amount to a violation of any rule or law. Under subdivision 1(1) the Board may suspend a license for "deception in connection with the practice of dentistry". The findings support the conclusion of deception in connection with the practice of dentistry.
E. D.D., in the process of getting a divorce, asked Schultz to complete needed dental work because it was covered by her husband's insurance. Because Schultz recommended such extensive work, D.D. consulted another dentist and did not return to Schultz. Schultz had performed some work for D.D. Schultz admits billing D.D. both for work which was done and for work which had never been done. The Board concluded Schultz violated Minn.R. 3100.6200B because of inadequate documentation and treatment and Minn.R. 3100.6200D for charging for services not rendered. The Board's conclusion is supported by Schultz's admission.
F. Schultz performed extensive dental work for R.J. and J.J. The Board found that prior to treatment Schultz agreed to take payments of $25 to $50 per month and not to charge interest. In 1979 Schultz began charging a service fee and shortly thereafter turned the J.'s account over to a collection agency. The Board found that Schultz engaged in personal conduct which brings discredit to the profession of dentistry. The Board's findings are supported by substantial evidence. The rule does not require a repeated pattern of conduct.
G. Schultz told R.W. that she had seven cavities. Because she had had few dental problems in the past, she saw another dentist who determined that she had no cavities. Schultz testified that his x-rays of R.W. were unuseable and based upon the x-rays he was unable to identify any cavities or needed dental work.
The Board found Schultz's conduct constituted a violation of Minn.Stat. § 150A.08, subd. 1(1) and (6) and Minn.R. 3100.6200B and/or I. The testimony of Schultz and the patient conflicted on this matter, as was the case in many of the charges. The Board believed the patient. The Board's findings are supported by substantial evidence supporting a conclusion that there was "deception in connection with the practice of dentistry." See Minn. Stat. § 150A.08, subd. 1(1).
H. Schultz charged N.O. for a MOD buccal-lingual filling and for a pulp cap for tooth 21, whereas x-rays revealed only a MOD alloy filling and no evidence of a pulp cap. The Board concluded Schultz violated Minn.R. 3100.6200A, D and I.
The Board's findings are based upon record evidence including testimony of another dentist that there was a MOD alloy filling and no pulp cap.
I. Schultz billed N.O. for a mesial-lingual filling on tooth 22. The Board found that there is no mesial-lingual filling on tooth 22. It concluded that Schultz billed for a service not performed in violation of Minn.R. 3100.6200D and I.
The Board's findings are supported by testimony of another dentist that a mesial-lingual filling does not appear on later x-rays and does not show in N.O.'s mouth.
J. Schultz removed teeth 29 and 30 from N.O.'s mouth. He charged $55 for root tip extraction and $15 for abscess removal for each tooth. He also removed *516 tooth 31 and charged $70. The total bill was $210. Another dentist testified that he would charge $35 to $40 for the same service because there was no bone holding the teeth. He testified that his fees were within the median range of those in the dental community. The Board concluded that Schultz violated Minn.R. 3100.6200D by charging an unconscionable fee. This finding is supported by record evidence.
K. Schultz removed teeth 25 and 26 from N.O. Schultz charged $25 for extraction and $15 for an abscess removal for each tooth for a total of $80. Another dentist testified that the teeth were so loose it was a "matter of just picking them out of there." He said the normal fee would be $25 total and there is no separate charge for abscess removal because a dentist always cleans up the extraction site.
The Board found that the abscess removal is part of an extraction, it should not be billed separately unless there is strong documentation to justify it, and Schultz was vague and uncertain about the meaning of his own records. It concluded Schultz violated Minn.R. 3100.6200B and/or D.
Schultz argued that the Board's findings do not support the conclusion that his fees were unconscionable or excessive. The Board concluded that Schultz was either grossly incompetent or that he charged an unconscionable fee or both. Again the Board is uniquely suited to make the determination of whether Schultz's conduct rises to the level of gross incompetence. It did not abuse its discretion in concluding the fees were unconscionable.
L. Schultz performed oral surgery on H.T., a Vietnamese refugee. At the request of H.T.'s sponsoring church, Schultz billed the Department of Public Welfare for root tip removal and abscess removal for teeth 19 and 30. The Board found that an x-ray taken before surgery showed that there were no root tips present for either tooth 19 or tooth 30. Schultz conceded that there was no root tip present on tooth 30 and that he billed for its removal and for abscess removal. The Board concluded that he violated Minn.R. 3100.6200D by charging for services not rendered.
We are unpersuaded by Schultz's arguments that the entries related to tooth 30 were due to a charting error by an assistant.
The record and his own admission support the conclusion that he charged for services not rendered.
M. The administrative law judge found that after surgery on H.T., Schultz billed the Department of Public Welfare for an antrum repair with a bone graft in the area of the upper left bicuspid, an antrum repair with bone graft in the area of the upper right cuspid, and an alveolectomy and gingiplasty on all four quadrants.
The Board found that the antrum repair with bone graft could not have been performed on the upper right side because the bicuspids were not removed. It found no need for an alveolectomy in the lower right area of H.T.'s mouth and that one hour and five minutes of surgery was insufficient time to perform all the services billed.
The Board concluded that with the antrum repair Schultz violated Minn.R. 3100.6200B and D and/or I; with the unnecessary alveolectomy, he violated Minn.R. 3100.6200B and/or E; and his non-performance of services violated Minn.R. 3100.6200D and/or I.
We agree with Schultz that the finding regarding the antrum repair on the upper right side is unsupported by the evidence. The Department of Public Welfare was billed for repair in the right cuspid area and Schultz testified that he performed the work in that area. The Board's findings only relate to the bicuspid area. The remainder of the Board's findings are supported by substantial evidence. The findings support the conclusion.
N. Schultz removed tooth 30 from P.T. and billed the Department of Public Welfare $25 for surgical root recovery and $370 for additional procedures in the area.
Schultz had no recollection or record related to the procedures. Schultz wrote to *517 the Department of Public Welfare and indicated that he placed three stainless steel sutures in P.T.'s mouth, but at the hearing he could not recall why or when they were put in. The Board found that placement of stainless steel sutures is uncommon and absent documentation could find no reason they should be used. It also found that Schultz removed tooth 2 without reason; he billed for a distal lingual amalgam on tooth 6, but there was no filling in the tooth; he billed for work on tooth 31 which was not performed; and he billed for work on tooth 18 which was not performed. The Board concluded that there were violations of Minn.Stat. § 150A.08, subd. 1(1) and (6) and Minn.R. 3100.6200D, E, H and I.
Schultz argues that the Board ignored the procedures actually performed and its findings are unrelated to the charge. The performance of some procedures is no defense to billing for those not performed. With regard to patient P.T., the Board charged Schultz with "attempting to inflate the bill with unnecessary work and extra charges". This notice is sufficient.
O. At the request of a church, Schultz provided services for N.T., a Vietnamese refugee. The church instructed Schultz to perform only work that was absolutely necessary because the family had no money and medical assistance would not pay for a permanent crown. Schultz placed a temporary crown on the tooth. It fell off several times because of swollen gum tissue. Each time Schultz replaced it, he charged for palliative care as well as recementing. The charges totalled $240. The Board found that Schultz had a choice of either restoring the tooth or extracting it and that his treatment fell below acceptable dental standards in violation of Minn.R. 3100.6200B. The determination made by the Board is one that it is uniquely suited to make. We find no abuse of discretion.
P. Schultz was charged with billing additional fees for abscess removal when the fee for this procedure is customarily included in an extraction. The Board found two patients, in addition to N.O., were so charged and concluded that Schultz either made an unconscionable separate charge or deviated from minimally accepted standards for documentation or both. Although the Board neglected to make a finding to support this conclusion, the record contains ample evidence to support it.
Q. Workmen used a jackhammer while remodeling the dental office below Schultz's. Schultz expressed his displeasure to the dentist and his staff with four letter words and threatening body language. They were intimidated and frightened. Schultz also threatened the dentist by phone at 10:30 P.M.
Another dentist stated by affidavit that Schultz swore at one of his employees, causing him concern for his family's safety. A pharmacist testified that Schultz had threatened him with doubled up fists.
The Board concluded that this conduct was conduct unbecoming a person licensed to practice dentistry as the term is defined in Minn.R. 3100.6200A. Schultz contends the conduct would not discredit the profession and was an isolated incident not warranting discipline. Again we find that the Board is uniquely able to determine whether Schultz's personal conduct brings discredit to the profession. We find no abuse of discretion.
R. After having dental work performed by Schultz, R.J. returned because of head and neck pains. Schultz explained that drainage was going down her neck and the side of her chest and was evacuating through her groin. While making this explanation, Schultz ran his hand down the side of her breast and onto her leg and groin area. The Board found the touching was irrelevant to any professional service and R.J.'s failure to make a complaint was not a defense. It concluded Schultz violated Minn.R. 3100.6200A and C.
Schultz argues that his conduct was not contemplated by rule and statute and there was "nothing more here than a dentist explaining to a patient the way and *518 manner that her lymph node system worked." We disagree. The Board's finding that the touching was irrelevant to any professional service supports the conclusion that his personal conduct discredited the profession of dentistry and that he was making suggestive, lewd, lascivious, or improper advances to a patient.
S. K.M. was hospitalized to have her wisdom teeth taken out. The Board found that on one post-extraction visit at the hospital, Schultz examined K.M.'s breast and explained he was checking for swollen glands. The Board found Schultz's touching of K.M.'s breast was unrelated to any professional service and concluded he violated Minn.R. 3100.6200A and C.
Schultz complains that the finding ignores the hospital records which explain the examination, ignores the fact that the incident happened in 1975, ignores his denial, and fails to recognize that K.M. is a known user of street drugs.
There is substantial evidence of record to support the Board's finding and its conclusion.
Schultz states that it is "unfair" to consider an incident which took place in 1975. There is no statute of limitations in the statutes governing the dental profession, Minn.Stat. §§ 150A.01-21.

DECISION
The Board complied with statutory requirements when it suspended Schultz. The evidence supports the Board's findings and, with two exceptions, its findings support its conclusions.
Affirmed.