In the Matter of the Petition of MINNE-
SOTA POWER FOR AUTHORITY TO
CHANGE ITS SCHEDULE OF RATES
FOR RETAIL ELECTRIC SERVICE.

No. C5–95–1813.

Court of Appeals of Minnesota.

March 19, 1996.

Joanne H. Turner, Robert S. Lee, Mackall, Crounse & Moore, PLC., Minneapolis, for relators Blandin Paper Company, Eveleth Taconite Company, Hibbing Taconite Company, Inland Steel Mining Company, and USX Corporation, collectively, the Large Power intervenors.

Hubert H. Humphrey, III, Attorney General, Margie E. Hendriksen, Assistant Attorney General, St. Paul, for respondents Minnesota Public Utilities Commission, Department of Public Service, and Office of Attorney General-Residential Utilities Division.

Considered and decided by DAVIES, P.J., and PETERSON and KALITOWSKI, JJ.

## OPINION

PETERSON, Judge.

Minnesota Power and Light Company (Minnesota Power) filed an application with respondent Minnesota Public Utilities Commission (MPUC), proposing a general increase in electric rates. The MPUC suspended the proposed rates and ordered interim rates. Following contested case proceedings, the MPUC determined new rates and set an effective date for the new rates and rate schedules. Relators challenge the delayed effective date for the new rates and rate schedules. We affirm.

## FACTS

Minnesota Power is an investor-owned company that provides retail electric service to eight different classes of customers, including a residential user class and a large power class. The relators in this appeal are a group of taconite mining companies and paper manufacturers who are members of Minnesota Power's large power class.

In January 1994, Minnesota Power filed an application with the MPUC, proposing a general increase in electric rates. The MPUC suspended the proposed rates and, as an interim rate, imposed a 7.09% across-the-board surcharge on all of Minnesota Power's customers.

Following evidentiary hearings and a recommendation by an administrative law judge, the MPUC issued a final determination on November 22, 1994. The MPUC granted Minnesota Power an overall increase in rates, but less than the 7.09% increase allowed during the interim period. The MPUC also directed a change in Minnesota Power's "rate design." The rate design change reallocated the revenues to be collected from Minnesota Power's various customer classes. The MPUC ordered that rates for residential customers be increased by 21% over a three-year period. In contrast, the large power class rates were increased by 3.79% during the first year. This rate design change shifted more of Minnesota Power's revenue burden to its residential user class.

The MPUC ordered Minnesota Power to file schedules of rates and charges reflecting the approved rates and rate design, along with a proposed effective date. The MPUC also ordered Minnesota Power to submit a refund proposal, reflecting the difference between interim rates and the final rates authorized by the November 22 order.

Minnesota Power filed its plan in March 1995, proposing to implement its proposed rate schedules effective January 1, 1995. The MPUC rejected Minnesota Power's plan and ordered the approved rates and rate schedules to take effect on June 1, 1995. Relators petitioned for reconsideration, claiming that the new rates should be effective as of the MPUC's November 22, 1994 order. The MPUC denied the petition for reconsideration.

## ISSUE

Did the MPUC have authority to delay implementing Minnesota Power's new rates and rate design until June 1, 1995?

## ANALYSIS

Review of the MPUC's decision is governed by chapter 14, the Minnesota administrative procedure act. Minn.Stat. § 216B.52 (1994). Pursuant to the administrative procedure act, this court may reverse or modify the MPUC's decision only if it is:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1994). Relators claim the MPUC's decision exceeded its statutory authority and was arbitrary and capricious.

Relators first argue that the MPUC has no discretion to designate the date upon which new rate schedules become effective. Rela-

tors argue that the MPUC's enabling statutes require that new rate schedules take effect on the date of an initial order by the MPUC—here, November 22, 1994.

 The MPUC, "being a creature of statute, has only those powers given to it by the legislature." *Great N. Ry. v. Public Serv. Comm'n,* 284 Minn. 217, 220, 169 N.W.2d 732, 735 (1969).

[A]ny reasonable doubt of the existence of any particular power in the [MPUC] should be resolved against the exercise of such power.

*Id.* at 221, 169 N.W.2d at 735 (quoting *Backus–Brooks Co. v. Northern P. Ry.,* 21 F.2d 4, 19 (8th Cir.1927), *cert. denied,* 275 U.S. 562, 48 S.Ct. 120, 72 L.Ed. 427 (1927)).

While express statutory authority need not be given a cramped reading, any enlargement of express powers by implication must be fairly drawn and fairly evident from the agency objectives and powers expressly given by the legislature.

*Peoples Natural Gas Co. v. Minnesota Pub. Utils. Comm'n,* 369 N.W.2d 530, 534 (Minn. 1985).

The MPUC's statutes governing rate hearings do not expressly indicate whether the MPUC has discretion to determine the effective date of new rate schedules filed by a utility. Minn.Stat. § 216B.15–.16 (1994). Because the statute is silent on this issue, we examine "whether the legislature intended, without saying so, to confer [such] power on the Commission." *Peoples Natural Gas Co.,* 369 N.W.2d at 534.

The legislature has indicated that interim rates must reflect the current rate design:

Rate design changes shall be prospective from the effective date of the new rate schedules approved by the commission.

Minn.Stat. § 216B.16, subd. 5; *see In re Peoples Natural Gas Co.,* 389 N.W.2d 903, 907–09 (Minn.1986)(approving calculation of interim refunds according to prior rate design, rather than according to finally-approved rate design).

 Accordingly, we conclude that where the MPUC has approved rate design changes, the MPUC has authority to delay implementation of approved rates and rate design changes until receipt and approval of new rate schedules. Until that final decision, the interim rates and rate design remain in effect.

 Relators claim that even if the MPUC had statutory authority to determine the effective date of new rate schedules, the choice of June 1, 1995 as an effective date in this case was arbitrary or capricious. "An agency's determination is arbitrary and capricious when it represents the agency's will and not its judgment." *Otter Tail Power Co. v. Minnesota Pub. Utils. Comm'n (In re Otter Tail Power Co.),* 417 N.W.2d 677, 680 (Minn. App.1988), *review denied,* (Minn. Mar. 23, 1988).

The MPUC provided three reasons to support its choice of June 1, 1995 as an effective date for Minnesota Power's new rate schedules:

[M]oderating the impact of significant rate increases has long been an important regulatory goal. * * * A June 1 effective date will further serve that goal.

The Commission is also concerned about the fairness of charging customers additional sums for service they have already purchased. These customers made good faith consumption decisions on the basis of quoted and filed rates. * * *

Furthermore, adding a monthly billing surcharge to an already complicated schedule of residential rate increases can only engender customer confusion, and potentially, mistrust.

 These reasons provide sufficient support for the MPUC's decision. The MPUC considered the issues, made judgments on the arguments raised by the parties, and explained its reasoning, thereby issuing a reasoned, rather than an arbitrary decision.

"Where there is room for two opinions on the matter, such action is not 'arbitrary and capricious,' even though it may be believed that an erroneous conclusion has been reached."

*Village of Goodview v. Winona Area Indus. Dev. Ass'n,* 289 Minn. 378, 381, 184 N.W.2d

662, 664, (1971)(quoting *Brown v. Wells,* 288 Minn. 468, 472, 181 N.W.2d 708, 711 (1970)).

## DECISION

The MPUC did not err by delaying implementation of Minnesota Power's rate design changes until June 1, 1995, after the new rate schedules had been submitted and approved.

**Affirmed.**