**In the Matter of the Medical License of Harvey B. FRIEDENSON, M.D.**

No. C1–97–1277.

Court of Appeals of Minnesota.

Feb. 24, 1998.

Review Denied April 30, 1998.

Hubert H. Humphrey III, Attorney General, Beverly Jones Heydinger, Deputy Attorney General, St. Paul, for respondent.

Frank R. Berman, Julia A. O'Brien, Frank R. Berman, P.A., and Ronald I. Meshbesher, Meshbesher & Spence, and Sandra K. Kensy, Minneapolis, for relator Friedenson.

Considered and decided by CRIPPEN, P.J., SCHUMACHER and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.*

Relator challenges the Minnesota Board of Medical Practice's revocation of his medical license. He argues that the board's decision (1) violated his due process rights; (2) improperly considered his arrests for solicitation of prostitution; (3) was based on erroneous application of law; (4) was not supported by substantial evidence; and (5) was arbitrary and capricious.

## FACTS

Relator Harvey B. Friedenson, M.D., was licensed to practice medicine in Minnesota in 1976; he specialized in obstetrics and gynecology. In April 1994, a patient of relator complained to the Minnesota Board of Medical Practice (board) that relator had performed a breast and pelvic examination without using gloves. The Complaint Review Committee (committee) of the board began its investigation of relator. Additional complaints were received regarding relator. In November 1995, the local media reported relator's arrests for solicitation of prostitution. On December 29, 1995, the committee met with relator for an investigative conference. The committee recommended temporary suspension of relator's license. On January 21, 1996, at the request of the board, relator underwent a psychiatric evaluation.

On March 22, 1996, the board heard the committee and relator regarding temporary suspension of relator's medical license. On April 4 relator moved to temporarily restrain the board from action affecting his medical license; the motion was denied in district court. On April 11 the board temporarily suspended relator's medical license. He filed a petition for a writ of prohibition, a petition for discretionary review, and a motion for a stay with this court; all were denied.

Between May 10 and August 15, 1996, a contested case was tried before an adminis-

trative law judge (ALJ). As a result of the 31-day trial, the ALJ made numerous findings and recommended discipline of relator. The board reviewed the ALJ's findings of facts, conclusions of law, and recommendations. The board differed with the ALJ on some points, but concurred with most. The board permanently revoked relator's license and ordered a civil penalty of $34,147.87. This appeal followed.

## ISSUES

I. Did the board's actions violate relator's due process rights?

II. Did the board improperly consider relator's arrests for solicitation of prostitution?

III. Did the board erroneously apply the law?

IV. Was the board's decision unsupported by substantial evidence?

V. Was the board's decision arbitrary and capricious?

## ANALYSIS

■ A reviewing court may reverse or modify a decision of an agency if the decision is:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

Arbitrary or capricious.

Minn.Stat. § 14.69 (1996). On appeal, an agency's decision is presumed correct. *City of Moorhead v. Minnesota Pub. Utils. Comm'n*, 343 N.W.2d 843, 846 (Minn.1984). Courts should defer to an agency's expertise and its "special knowledge in the field of [its] technical training, education and experience." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn.1977).

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## I.

Relator argues that the board violated his due process rights in its first hearing to temporarily revoke his medical license by denying him (1) reasonable notice, (2) a timely opportunity for a hearing, (3) a meaningful opportunity to present evidence and argument, (4) the right to an impartial decision-maker, and (5) the right to a reasonable decision based solely on the record. *See Humenansky v. Minnesota Bd. of Med. Exam'rs*, 525 N.W.2d 559, 565 (Minn.App. 1994), *review denied* (Minn. Feb. 14, 1995). These claims simply do not have merit: relator was granted each of the rights enumerated in *Humenansky*.

## II.

■ Relator argues that the board improperly considered his arrests for solicitation of prostitution. He cites to law dictating that it is a violation of a person's civil rights to disqualify him or her solely or in part because of a prior conviction. Minn.Stat. §§ 364.03, subd. 1; 364.10 (1996). However, relator fails to clarify the terms of the sections he cites. The first and most obvious point is that they apply to public employment; relator was a private practitioner. Further, the statute specifically does not apply to the board's revocation of a medical license. Minn.Stat. § 364.09(d) (1996).

Secondly, the statute dictates that disqualification may not be for a prior conviction *"unless* the crime or crimes for which convicted directly relate to the position of employment sought or the occupation for which the license is sought." Minn.Stat. § 364.03, subd. 1 (emphasis added). The state argues that "the relevance of such behavior by a physician practicing in the area of obstetrics and gynecology is obvious. Respect for appropriate boundaries is essential." We agree. While relator's solicitation of prostitutes alone may not have been sufficient to warrant investigation, such actions, in the context of this case, were relevant and worthy of the board's consideration.

## III.

Relator argues that the board erred by applying the incorrect standard of proof and in not observing the statute of limitations.

■ First, relator argues that the board improperly applied the preponderance of evidence standard of proof, rather than the clear and convincing standard. However, the reasoning behind relator's assertion that the clear and convincing standard should apply is vague, seeming to stem from what relator considers the constitutional strictures on the proceeding. Relator also cites to cases in jurisdictions that do employ this standard to physician disciplinary proceedings. But the proper standard for administrative proceedings in Minnesota is preponderance of the evidence unless the substantive law establishes a different burden. Minn. R. 1400.7300, subpt. 5 (1995). The statute governing the board's discipline of medical doctors is silent regarding the standard of proof. Minn.Stat. § 147.091. The preponderance of the evidence standard applies to professional disciplinary proceedings in Minnesota. We apply that standard here. *See, e.g., In re Ins. Agents' Licenses of Kane*, 473 N.W.2d 869, 874 (Minn.App.1991) (insurance agent's license), *review denied* (Minn. Sept. 25, 1991); *Matter of Schultz, Etc.*, 375 N.W.2d 509, 514 (Minn.App.1985) (dentist's license).

■ Second, relator argues that the statute of limitations, which bars proceedings commencing more than seven years from the date of a violation of the medical professional standard, bars several offenses. *See* Minn. Stat. § 147.091, subd. 8 (1996). However, the statute specifically excepts claims arising out of subdivision 1, paragraph (t), which controls the sexual conduct. The claims that relator characterizes as stale involve sexual conduct and are not subject to the statute of limitations.

The board did not make errors of law.

## IV.

■ Relator argues that the board's revocation of his license is not supported by substantial evidence when viewing the record as a whole. Relator is especially concerned with what he views as the board's rejection of the ALJ's credibility assessments. Assessments of witness credibility are "peculiarly within the province of the factfinder." *Eden*

*Park Apartments v. Weston,* 529 N.W.2d 732, 734 (Minn.App.1995). In this case, the ALJ, which held a 31–day trial, is the factfinder.

The board did not reject the ALJ's credibility assessments, but rather occasionally disagreed with inferences or conclusions based on testimony. As an example, the board came to a different legal conclusion based on the factual findings relating to Patient # 8. Patient # 8 testified that she could see that relator had not worn gloves for either her pelvic exam or rectal exam. The ALJ concluded that it was not proven that relator did not wear gloves, and that Patient # 8 could not see relator's hands and was confused by relator only gloving his examining hand and by not seeing or hearing the gloves being put on or taken off. The board, however, concluded that Patient # 8 could see relator's examining hand and determined that he had not worn gloves. This is not a credibility issue, but a different application of standards. The board wisely viewed Patient # 8's testimony as providing substantial evidence to support grounds, for discipline pursuant to Minn.Stat. § 147.091, subd. 1(g) (willful or careless disregard for the health, welfare, or safety of a patient) and subd. 1(k) (failure to conform to the minimal standards of acceptable prevailing medical practice).

In the sphere of sexual conduct, on which relator seems to focus most of his argument, the board tended to accept the ALJ's findings, but occasionally found a violation where the ALJ did not. The instances involving Patients # 11, # 20, and # 27, are similar: all testified that relator treated them in an inappropriate sexualized manner. All testified that they received hugs from relator that they found to be inappropriate in the context of their doctor visit. Statutory law forbids a medical licensee from

> [e]ngaging in conduct with a patient which is sexual *or may reasonably be interpreted by the patient as sexual,* or in any verbal behavior which is seductive or sexually demeaning to a patient.

Minn.Stat. § 147.091, subd. 1(t) (emphasis added). The ALJ concluded that in the context of each situation, the hugs could not reasonably be considered sexual. The board,

to the contrary, found that the hugs were reasonably interpreted by each patient to be sexual. Again, this is not a matter of credibility, but a different result based on application of the appropriate standard.

■ Substantial evidence is defined as:

1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;
2. More than a scintilla of evidence;
3. More than some evidence;
4. More than any evidence; and
5. Evidence considered in its entirety.

*Cable Communications Bd. v. Nor-West Cable Communications Partnership,* 356 N.W.2d 658, 668 (Minn.1984). The board's findings of fact, conclusions, and order consist of 38 pages of clear, well-supported documentation, plus a 19–page memorandum. The board's conclusions are supported by substantial evidence.

### V.

■ Relator argues that the board's decision was arbitrary and capricious because it failed to explain its reasons for deviating from the ALJ's findings of fact and conclusions of law, and because of its assessment of the most severe disciplinary action.

■ An agency decision is arbitrary and capricious when it is an exercise of that agency's will, rather than its judgment. *In re Petition of Minn. Power for Auth. to Change Its Schedule of Rates for Retail Elec. Serv.,* 545 N.W.2d 49, 51 (Minn.App.1996). "Where there is room for two opinions on the matter, such action is not 'arbitrary and capricious' * * *." *Brown v. Wells,* 288 Minn. 468, 472, 181 N.W.2d 708, 711 (1970).

For the reasons outlined in response to relator's argument that the board's decision was not supported by substantial evidence, we conclude that the board's deviation from the ALJ's conclusions was not arbitrary and capricious.

■ Regarding the imposition of a penalty, relator argues that the permanent revocation of his medical license—the most severe penalty available—was arbitrary and capricious given relator's "technical" viola-

tions in the context of his long career. When discipline is imposed on a professional, "the nature and duration of the discipline is best determined by his or her fellow professionals, who are in a superior position to evaluate the breaches of trust and unprofessional conduct." *Padilla v. Minnesota State Bd. of Med. Exam'rs*, 382 N.W.2d 876, 886–87 (Minn.App.1986), *review denied* (Minn. Apr. 24, 1996). The board's permanent revocation of relator's medical license was imposed by a group of medical professionals, in the exercise of their careful and prudent judgment. Relator's violations, which undermine the reputation of the medical profession, cannot be characterized as merely "technical." As the supreme court noted:

> Professionals have a deep responsibility not to abuse the trust which licensure places in them. There is no other profession in which one passes so completely within the power and control of another as does the medical patient.

*Id.* at 887. The record supports the finding of relator's lack of professionalism and his disrespect for the public trust. We conclude that the board acted well within its discretion by permanently revoking his medical license.

It was no small matter for the board to revoke relator's license to practice medicine. Likewise, this court takes no comfort in sustaining the board's findings but, in the face of the record and the overwhelming evidence supporting the findings of the board of serious violations by relator, we are compelled to affirm the revocation of relator's license. Were the board or this court to do otherwise, the physician's oath, which has come down through the years from ancient times, would be reduced to meaningless words, and medical ethics reduced to a nullity. The Hippocratic Oath states, in part:

> I will follow that system of regimen which, according to my ability and judgment, I consider for the benefit of my patients, and abstain from whatever is deleterious and mischievous. * * * With purity and with holiness I will pass my life and practice my Art. Into whatever houses I enter, I will go into them for the benefit of the sick, and will abstain from every voluntary act of mischief and corruption; and, further,

from the seduction of females or males * * *.

> * * * *

> While I continue to keep this Oath unviolated, may it be granted to me to enjoy life and the practice of the art, respected by all men, in all times. But should I trespass and violate this Oath, may the reverse be my lot.

The Oath is a continuing challenge to today's physicians to conform to the high standards that it commands, and which the public at large and individual patients, in particular, have a right to expect.

## DECISION

Given relator's numerous breaches of the standards of the medical profession, the preponderance of the evidence supports the board's revocation of relator's license.

**Affirmed.**