*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0505**

In the Matter of the Medical License of S. Fred Everett, M.D.,
Year of Birth: 1935, License Number: 22,350.

**Filed January 11, 2016
Affirmed
Schellhas, Judge**

Minnesota Board of Medical Practice
License Number: 22,350

Mark J. Miller, Jennifer E. Speas, Minneapolis, Minnesota (for relator)

Lori Swanson, Attorney General, Jason Pleggenkuhle, Lucas T. Clayton, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Rodenberg, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Relator challenges the revocation of his medical license, arguing that the revocation was not supported by substantial evidence, that the revocation was arbitrary and capricious, and that his due-process rights were violated. We affirm.

**FACTS**

Relator S. Fred Everett, M.D., age 80, obtained his medical license from the State of Minnesota in 1975. Dr. Everett limited the majority of his medical practice to North

Dakota, until he began practicing actively in Minnesota in 2002. Both the North Dakota Board of Medical Examiners (ND board) and respondent Minnesota Board of Medical Practice (MN board) have disciplined Dr. Everett for substandard professional conduct on numerous occasions.

In 1991, the ND board revoked Dr. Everett's North Dakota medical license after he stipulated to allegations that he provided substandard medical care, which included prescribing drugs in dangerous combinations and quantities to at least two patients, one of whom died as a probable result, at least in part, of ingesting medications that Dr. Everett prescribed. The ND board stayed execution of the revocation order on a number of conditions. In 1994, the MN board issued an order that mirrored the 1991 ND board order and required Dr. Everett to secure an approved supervising physician to provide reports to the MN board about Dr. Everett's Minnesota practice. In 1996, the ND board restored Dr. Everett's North Dakota medical license to an unconditional status. Based on the ND board's action, the MN board also restored Dr. Everett's Minnesota medical license to an unconditional status in 1996.

In 1999, the ND board issued an order restricting Dr. Everett's North Dakota medical license after he stipulated to allegations that, among other things, he had "failed to adequately recognize and manage chemical dependency issues, particularly drug addictions, in his patients" and his medical records "lacked the appropriate documentation for diagnosis, testing and treatment of patients." The ND board required Dr. Everett to enter into collaborative agreements with other physicians to ensure that his patients would be referred to the care of another physician when they required hospitalization. The ND

2

board also prohibited Dr. Everett from treating any psychiatric conditions or prescribing any psychotropic drugs. Later that year, the MN board disciplined Dr. Everett in an order that mirrored the 1999 ND board order and required Dr. Everett, among other things, to comply with the terms and conditions of the 1999 ND board order and to submit documentation to the MN board of his compliance with that order.

In May 2002, the ND board revoked Dr. Everett's North Dakota medical license after he admitted that he had "failed to appropriately document medical records with adequate or legible or coherent notes" and had violated the 1999 ND board order by prescribing certain drugs in dosages exceeding the maximum authorized by the ND board, advising a patient to terminate the use of an antidepressant medication, and prescribing a patient a prohibited medication.

In July 2002, after notifying the MN board that he intended to practice medicine in Minnesota, Dr. Everett stipulated to certain facts regarding the 2002 ND board order, and the MN board placed restrictions on Dr. Everett's Minnesota medical license. Among other things, the MN board required Dr. Everett to meet monthly with an approved supervising physician who would review Dr. Everett's daily prescription log, provide quarterly reports to the MN board, and report his or her approval of Dr. Everett's prescription log. The 2002 MN board order allowed Dr. Everett to petition for reduced monitoring after one year and for reinstatement of an unconditional license after two years. In September 2005, the MN board restored Dr. Everett's Minnesota medical license to an unconditional status.

In September 2011, Dr. Everett stipulated to the issuance of the MN board order that underlies this appeal. The MN board based its 2011 order on complaints that it received

3

between July 2007 and October 2008 alleging that Dr. Everett "inappropriately prescribed various medications, including narcotics, for multiple patients." The MN board also based its 2011 order on a review of Dr. Everett's documentation, patient care, and prescribing practices and procedures. That review revealed that Dr. Everett

> failed to appropriately maintain and adequately document his clinic records. At times, [Dr. Everett]'s clinic notes failed to adequately document his prescriptions or refills. A review of [Dr. Everett]'s practice also indicated that for some patients [Dr. Everett] did not implement or adequately enforce narcotic contracts. [Dr. Everett] sometimes authorized "early refills" of controlled substances, authorized replacement prescriptions after his patients reported that their drugs were lost or stolen, and continued to prescribe controlled substances to patients with suspected or admitted chemical dependency. [Dr. Everett] required biological fluid screens, but sometimes did not suspend treatment when his patients either tested positive for illegal drugs, or tested negative for their prescribed medications.

In its 2011 order, the MN board suspended Dr. Everett's Minnesota medical license for two years, staying all but one month of the suspension. Among other things, the 2011 order required Dr. Everett to meet monthly with an approved supervising physician who would submit quarterly reports to the MN board. The 2011 order specified that Dr. Everett was responsible for ensuring timely submission of all required reports.

In October 2011, the MN board approved a supervision agreement between Dr. Everett and another physician. From October 2011 until November 2014, as required by the 2011 order, Dr. Everett and the supervising physician met monthly and the supervising physician submitted the required quarterly reports to the MN board. On November 18, 2014, the supervising physician reported to the MN board that she had "reviewed Dr.

4

Everett's patient care records. As in other quarters, there were no prescriptions for controlled pain medications in the past quarter." The supervising physician also informed the MN board that "this is the last review I will do on behalf of Dr. Everett."

On December 8, 2014, the MN board received a letter from Dr. Everett concerning the status of his Minnesota medical license. Dr. Everett wrote:

> First, with regard to my monitoring requirement, [the supervising physician] has monitored the monthly [sic] for nearly 4 years and has reached her limit. With no end in sight, she sees no value in continuing and refuses to participate any further. She is unbending in her position. I have searched everywhere I can think of and have not been able to find a replacement.

The MN board responded to Dr. Everett by a letter, dated December 15, 2014, stating that "[i]f you don't find a new supervising physician, you will be in violation of the terms of [the 2011 order]. The Board is unable to assist with that matter." Notwithstanding the MN board's letter, from December 2014 until March 5, 2015, with no supervision by a physician, Dr. Everett continued to practice medicine.

On March 14, 2015, the MN board conducted a hearing concerning Dr. Everett's continued practice of medicine without a supervising physician. At the hearing, the Complaint Review Committee (committee) argued that the only adequate remedy to protect the public was revocation of Dr. Everett's Minnesota medical license. The committee noted the MN board's receipt in February 2015 of a new complaint against Dr. Everett alleging that he "engaged in inappropriate prescribing of controlled substances." Dr. Everett, acting pro se, acknowledged that he had practiced medicine for three months without a supervising physician but argued that he had been compliant for 40 out of 43 months and

that he "respect[ed] the restrictions." He also argued that he recently had located two physicians who were willing to supervise him and that the MN board had failed to respond to his former supervising physician's questions as required by the supervision agreement.

On March 18, 2015, the MN board issued an order concluding that Dr. Everett had violated the 2011 order by failing to have a supervising physician and by continuing to practice without supervision. The MN board revoked Dr. Everett's Minnesota medical license and prohibited him from applying for another medical license for ten years.

This certiorari appeal follows.

## D E C I S I O N

"Agency decisions are reversed only when they reflect an error of law, the findings are arbitrary and capricious, or the findings are unsupported by substantial evidence." *Cable Commc'ns Bd. v. Nor-West Cable Commc'ns P'ship*, 356 N.W.2d 658, 668 (Minn. 1984); *see also Rodne v. Comm'r of Human Servs.*, 547 N.W.2d 440, 444–45 (Minn. App. 1996) ("On certiorari appeal from a quasi-judicial agency decision that is not subject to the administrative procedure act, we inspect the record to review '. . . whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it.'" (quoting *Dietz v. Dodge Cty.*, 487 N.W.2d 237, 239 (Minn. 1992))).

### Substantial evidence for revocation

Dr. Everett first argues that the revocation was not supported by substantial evidence.

6

A decision is supported by substantial evidence when it is supported by (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety.

*Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 464 (Minn. 2002).

The substantial evidence test requires a reviewing court to evaluate the evidence relied upon by the agency in view of the entire record as submitted. If an administrative agency engages in reasoned decision[-]making, the court will affirm, even though it may have reached a different conclusion had it been the factfinder.

*Cable Commc'ns Bd.*, 356 N.W.2d at 668–69 (citation omitted). "An administrative agency's decision enjoys presumptive correctness, and we defer to the agency's expertise and specialized knowledge in the field. We will not disturb an agency's decision as long as the agency's determination has adequate support in the record as required by the substantial evidence test." *In re Minnikka Props., LLC*, 834 N.W.2d 572, 577 (Minn. App. 2013) (quotation and citation omitted); *see also Cable Commc'ns Bd.*, 356 N.W.2d at 668 (stating that "[appellate] court[s] attach[] a presumption of correctness to agency decisions and show[] deference to an agency's conclusions in the area of its expertise").

Dr. Everett argues that the MN board's decision to revoke his license was not supported by substantial evidence because the board relied "almost exclusively" on his past discipline in North Dakota. Dr. Everett argues that the MN board was prohibited statutorily from considering his North Dakota discipline because Minnesota Statutes section 147.091, subdivision 8 (2014), provides a seven-year statute of limitations for MN board disciplinary

proceedings. But by its terms, section 147.091, subdivision 8, does not prohibit the MN board from considering past disciplinary actions in determining appropriate discipline for the violation of a current order. *See* Minn. Stat. § 147.091, subd. 8 ("No board proceeding against a regulated person shall be instituted unless commenced within seven years from the date of the commission of some portion of the offense or misconduct complained of . . . ."). We conclude that the MN board did not err by considering Dr. Everett's past discipline to determine appropriate discipline for his violation of the 2011 order.

Dr. Everett similarly argues that, because the MN board granted him an unconditional license in 2005, it "waived its right to feign indignation at [his] past discipline." Dr. Everett provides no authority to support the proposition that an agency cannot consider past discipline after granting an unconditional license; he therefore forfeits the argument. *See State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." (quotation omitted)).

Dr. Everett also suggests that his only violation of the 2011 order was "his failure to secure a single quarterly supervisory report," which he contends did not constitute a material breach of the supervision agreement. He further argues that his breach is mitigated by the MN board's failure to fulfill its own duties under the agreement to "[a]nswer any questions and/or provide information that clarifies the Supervising Physician's role and responsibilities." In his prehearing submission to the MN board, Dr. Everett quotes a statement allegedly made by his supervising physician that

8

it would be very helpful to me if I knew where things stand at the moment. It was my understanding that cases like this usually resolve in several months but as you know it's been several years. If I were brought up to date as to where things are or what was impeding the process, I would be better prepared to continue in what seems to be endless at this time.

Dr. Everett ignores the provision in the 2011 order that "[t]he evidentiary record [at the hearing] before the Board shall be limited to . . . affidavits [made on personal knowledge] and this Stipulation and Order." And Dr. Everett did not submit an affidavit from the supervising physician. The alleged statement therefore was not part of the evidentiary record at the hearing and could not be considered by the MN board, which notes that no evidence in the record supports Dr. Everett's assertion that his supervising physician had unanswered questions for the MN board. Indeed, none of the supervising physician's quarterly reports, which were part of the record before the MN board, revealed that the physician had any questions regarding her role.

Dr. Everett's arguments are unavailing. Even if the MN board improperly considered Dr. Everett's past discipline, its decision nevertheless is supported by other substantial evidence. In its 2011 order, the MN board required Dr. Everett to meet monthly with an approved supervising physician who would submit quarterly reports to the MN board. Dr. Everett was responsible for ensuring timely submission of all required reports. In its 2015 order, the MN board found that "[Dr. Everett] ha[d] continued to practice without a supervising physician for at least 3 months and ha[d] not removed himself from practice, despite being out of compliance with the 2011 . . . Order." This finding is supported by record evidence. In addition to Dr. Everett's and his supervising physician's

9

letters to the MN board, Dr. Everett admitted at his hearing that "[t]he Notice for Hearing today said that we were going to discuss whether I was guilty of practicing without a supervising physician, *which I am for three months*." (Emphasis added.) The record demonstrates that substantial evidence supports the MN board's decision to revoke Dr. Everett's medical license.

### *Revocation not abuse of discretion or arbitrary and capricious*

"An administrative agency's assessment of penalties or sanctions is an exercise of its discretionary power. *In re Haugen*, 278 N.W.2d 75, 80 n.10 (Minn. 1979). A reviewing court, therefore, may not interfere with the penalties or sanctions imposed by an agency decision unless a clear abuse of discretion is shown by the party opposing the decision." *In re Lawful Gambling License of Henry Youth Hockey Ass'n*, 511 N.W.2d 452, 456 (Minn. App.), *modified on other grounds mem.*, 559 N.W.2d 410 (Minn. 1994); *see also Proetz v. Minn. Bd. of Chiropractic Exam'rs*, 382 N.W.2d 527, 532–33 (Minn. App. 1986) ("The assessment of sanctions by a professional board is discretionary. Absent an abuse of discretion, the Board's decision will not be disturbed on appeal." (citation omitted)), *review denied* (Minn. May 16, 1986). "[An] agency's conclusions are not arbitrary and capricious so long as a rational connection between the facts found and the choice made has been articulated." *In re Review of 2005 Annual Automatic Adjustment of Charges for All Elec. & Gas Utils.*, 768 N.W.2d 112, 120 (Minn. 2009) (quotations omitted). This court has noted that:

> Boards and commissions like the Board of Medical Examiners are appointed because of their special expertise regarding the standards of their own professions. When a

10

> professional person must be disciplined for breaching these standards, the nature and duration of the discipline is best determined by his or her fellow professionals, who are in a superior position to evaluate the breaches of trust and unprofessional conduct.

*Padilla v. Minn. State Bd. of Med. Exam'rs*, 382 N.W.2d 876, 886–87 (Minn. App. 1986), *review denied* (Minn. Apr. 24, 1986). "[Appellate] court[s] attach[] a presumption of correctness to agency decisions and show[] deference to an agency's conclusions in the area of its expertise." *Cable Commc'ns Bd.*, 356 N.W.2d at 668.

In its 2015 order, the MN board concluded that Dr. Everett had violated the 2011 order and Minn. Stat. § 147.091, subd. 1(f) (2014), which prohibits "[v]iolating . . . an order of the board . . . which relates to the practice of medicine." On the basis of the statutory violation, the MN board concluded that it was authorized to take disciplinary action under Minn. Stat. § 147.141 (2014). That statute provides that, when a licensed physician commits a violation of specified statutes, including section 147.091, "[the board] may . . . revoke the [physician's] license." Minn. Stat. § 147.141. In addition, the 2011 order provided that, in the event Dr. Everett violated the order, "[a]t the hearing, the Board will determine whether to impose additional disciplinary action, including additional conditions or limitations on [Dr. Everett]'s practice, or suspension or revocation of [Dr. Everett]'s license."

Dr. Everett argues that the MN board acted in an arbitrary and capricious manner by revoking his license for a minimum of ten years, which "amounts to a lifetime ban" because Dr. Everett is 80 years old. He argues that the MN board's decision to revoke his license for ten years is "inexplicable" because his violations over the past 13 years were

11

"'technical'" and because "[h]istorically, license revocation has been reserved for the most egregious personal and professional misconduct."

> [A]n agency ruling is arbitrary and capricious if the agency (a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise.

*Citizens Advocating Responsible Dev. v. Kandiyohi Cty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006). In *In re Med. License of Friedenson*, the MN board permanently revoked a physician's license for failing to wear gloves when performing patient examinations and making sexual advances on patients. 574 N.W.2d 463, 466–67 (Minn. App. 1998), *review denied* (Minn. Apr. 30, 1998). The physician argued that the revocation of his license "was arbitrary and capricious given [his] 'technical' violations in the context of his long career." *Id.* at 467–68. This court affirmed, concluding that "the board acted well within its discretion by permanently revoking [the physician's] medical license." *Id.* at 468.

While we appreciate the seriousness of Dr. Everett's circumstances and the harsh reality imposed by the MN board's revocation, we conclude that the MN board's decision to revoke Dr. Everett's license was reasonable because the "supervising physician requirement was critical to ensuring the public was adequately protected." The MN board's decision to revoke Dr. Everett's license had a rational connection to his conduct. *See Review of 2005 Adjustment of Charges*, 768 N.W.2d at 120. We therefore conclude that the MN board did not abuse its discretion or act arbitrarily or capriciously when it revoked Dr. Everett's license.

*Due-process rights*

Before Dr. Everett's hearing, the MN board provided him written notice of his alleged noncompliance with the 2011 order. The identified noncompliance included only his failure to secure a new approved supervising physician as required by the 2011 order. But the committee submitted an affidavit stating that "[i]n February 2015, the Board received a new complaint alleging that Dr. Everett failed to engage in proper prescribing practices of controlled substances," and, at the hearing, counsel for the committee referenced the February 2015 complaint twice. First, counsel stated that Dr. Everett's continued practice without a supervising physician was "even more concerning to the Committee given that during this unsupervised time frame, the Board . . . received a new complaint concerning Dr. Everett . . . which alleges that he has engaged in inappropriate prescribing of controlled substances." Second, counsel stated that, during the unsupervised time frame, the MN board "received a complaint concerning [Dr. Everett's] prescribing practices. That complaint was purposely not included in the materials because it is still in process and being evaluated and investigated . . . ." In its 2015 order, the MN board referred to the new complaint as follows: "In February 2015, the Board received a new complaint alleging that [Dr. Everett] failed to engage in proper prescribing practices of controlled substances."

Dr. Everett argues that the MN board violated his due-process rights by considering the complaint because no evidence was presented on the complaint and he did not have an opportunity to address the allegations in it. "A license to practice medicine is a property right deserving constitutional protection, including due process." *Humenansky v. Minn. Bd.*

13

*of Med. Exam'rs*, 525 N.W.2d 559, 566 (Minn. App. 1994), *review denied* (Minn. Feb. 14, 1995). Due-process protections require, among other things, "reasonable notice" and "a timely opportunity for a hearing." *Id.* at 565 (citing *Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S. Ct. 1011, 1020 (1970)). The MN board argues that it referenced the complaint only to "provid[e] context for the importance of the supervising physician requirement . . . and the Committee's concerns with [Dr. Everett's] violation of that requirement."

We reject Dr. Everett's due-process arguments. Dr. Everett did not object to the MN board's consideration of the February 2015 complaint at the hearing; he merely argued that the allegations in the complaint were untrue. Appellate courts generally only will consider issues that were presented and considered below. *See In re Stadsvold*, 754 N.W.2d 323, 327 (Minn. 2008) (declining to address zoning issue that "was not presented to or considered by the Board [of Adjustment]" (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988))). Although Dr. Everett appeared without counsel at his hearing, he was not relieved of his obligation to preserve arguments for appeal. *See Thorp Loan & Thrift Co. v. Morse*, 451 N.W.2d 361, 363 (Minn. App. 1990) (declining to address pro se appellant's argument raised for first time on appeal, stating that "[w]hen an appellant acts as attorney pro se, appellate courts are disposed to disregard defects in the brief, but that does not relieve appellants of the necessity of providing an adequate record and preserving it in a way that will permit review" (citing *Noltimier v. Noltimier*, 280 Minn. 28, 29, 157 N.W.2d 530, 531 (1968))), *review denied* (Minn. Apr. 13, 1990).

14

Moreover, the MN board did not implicate Dr. Everett's due-process rights by its finding that it had "received a new complaint alleging that [Dr. Everett] failed to engage in proper prescribing practices of controlled substances." *Cf. Humenansky*, 525 N.W.2d at 566 (concluding that physician's protected interest in medical license was not implicated by investigatory proceeding because physician "face[d] no potential discipline until the board beg[an] formal adjudicatory proceedings"). The MN board made no finding that Dr. Everett had "failed to engage in proper prescribing practices of controlled substances." The MN board instead concluded that Dr. Everett had violated the terms of the 2011 order, and substantial evidence supports that conclusion.

**Affirmed.**