Dr. Diane Bay **HUMENANSKY**,
Appellant,

v.

The **MINNESOTA BOARD OF MEDICAL EXAMINERS, etc.,**
et al., Respondents.

No. C5–94–1090.

Court of Appeals of Minnesota.

Dec. 20, 1994.

Review Denied Feb. 14, 1995.

Philip G. Villaume, Bloomington, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Jacquelyn E. Albright, Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by SHORT, P.J., and KALITOWSKI, and JONES*, JJ.

## OPINION

SHORT, Judge.

This case questions the authority of the Minnesota Board of Medical Practice ("board") to require a licensed physician to submit to an examination under Minn.Stat. § 147.091, subd. 6(a) (1992). On appeal from the trial court's denial of her request for temporary injunctive relief, Dr. Diane Humenansky argues: (1) the trial court abused its discretion in concluding that an examination would cause her inconvenience but not irreparable harm; and (2) Minn.Stat. § 147.091, subd. 6(a) is unconstitutionally vague and violates her constitutional rights to be free from unreasonable searches, to due process of law, and to privacy.

## FACTS

Humenansky is a duly licensed psychiatrist in Minnesota and is subject to the board's jurisdiction. The board received twelve disciplinary complaints against Humenansky alleging nine different grounds for disciplinary action. Minn.Stat. § 147.091, subd. 1(f), (g), (k), (l), (m), (q), (r), (s), (t) (1992).

Pursuant to Minn.Stat. § 214.10, subd. 1 (1992), the board asked the Minnesota Attorney General to conduct an investigation into Humenansky's practice of medicine. The Complaint Review Committee ("committee"), composed of three board members and a designee from the attorney general's office, conducted an initial investigation and held a conference with Humenansky. *See* Minn. Stat. § 214.103, subd. 6(a) (attempts at resolution). In June 1992, the committee found probable cause to believe Humenansky could not practice medicine with reasonable skill and assure her patients' safety; therefore, it ordered Humenansky to submit to a mental and physical examination.

Humenansky asked the board to postpone her examination so she could address the committee's complaints about her treatment of Multiple Personality Disorder patients. The board agreed and Humenansky met with the committee. Following that meeting, the board asked a psychiatric expert to review the committee's investigation into Humenansky's practice. The expert concluded Humenansky's "personal and loose responses to questions, the disorganized rambling discharge summaries, her inconsistency with patient care, her repeated significant and dangerous boundary problems pose serious threats to respectful, consistent, noninjurious patient care." The expert recommended Humenansky undergo both a psychiatric evaluation and psychological testing.

In January 1994, the board again ordered Humenansky to submit to a mental and physical examination. Humenansky sued the board, its executive director, and the state, asking the trial court to enjoin the board's order and to declare Minn.Stat. § 147.091, subd. 6(a) (1992) (authorizing mental examination and access to medical data) unconstitutional. In March, the trial court temporarily restrained implementation of the board's order and demanded clarification regarding the nature of the tests to be performed on Humenansky. After an evidentiary hearing, the trial court denied Humenansky's request for a temporary injunction and upheld the statute's constitutionality.

## ISSUES

I. Did the trial court abuse its discretion in denying Humenansky's request for temporary injunctive relief?

II. Is Minn.Stat. § 147.091, subd. 6(a) (1992) constitutional?

## ANALYSIS

If the board has probable cause to believe that a physician is unable to practice medicine with reasonable skill and safety to patients because of a mental or physical condition, the board may direct the physician to submit to a mental or physical examination. Minn.Stat. § 147.091, subd. 6(a) (1992). The statute provides in relevant part:

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

For the purpose of this subdivision every physician licensed under this chapter is deemed to have consented to submit to a mental or physical examination when directed in writing by the board and further to have waived all objections to the admissibility of the examining physicians' testimony or examination reports on the ground that the same constitute a privileged communication.

*Id.* As a condition of licensure in Minnesota, Humenansky gave her consent to a board-directed examination. A majority of states have similar licensure requirements.[1] By this lawsuit, Humenansky challenges Minnesota's implied consent law for examination of physicians.

## I.

■ In deciding whether to grant a temporary injunction, the trial court must consider the following five factors: the relationship of the parties, the relative harm to the parties if the injunction is granted or denied, the likelihood of success on the merits, public policies expressed in the statutes, and the administrative burdens involved in supervising and enforcing the decree. *Dahlberg Bros., Inc. v. Ford Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965). A decision on whether to grant a temporary injunction is left to the trial court's sound discretion and will not be overturned on appeal absent a clear abuse of that discretion. *Carl Bolander & Sons Co. v. City of Mpls.*, 502 N.W.2d 203, 209 (Minn.1993); *Eakman v. Brutger*, 285 N.W.2d 95, 97 (Minn.1979).

The trial court applied the *Dahlberg* criteria and concluded that Humenansky had failed to show any irreparable harm. *See AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961) (party seeking relief has heavy burden of proof regarding need for relief); *Morse v. City of Waterville*, 458 N.W.2d 728, 729 (Minn.App.1990) (the moving party's failure to demonstrate irreparable harm is reason to deny injunctive relief), *pet. for rev. denied* (Minn. Sept. 28, 1990).

■ According to Humenansky, a free-wheeling investigative examination of her mind and body will cause her to suffer irreparable harm. *See In re Agerter*, 353 N.W.2d 908, 913 (Minn.1984) (right of privacy protects judge from obligation to disclose information about sex life). But the record demonstrates that the examination of Humenansky: (1) will be conducted according to Minnesota's Patients' Bill of Rights, Minn. Stat. §§ 144.651, .652 (1992 & Supp.1993), which allows rights such as sign-out privileges, access to visitors, and the use of a telephone; (2) will require her consent to every aspect of the examination and each test performed; (3) will be administered by licensed professionals who are bound by standards of practice and ethical canons; and (4) will be limited by Minn.Stat. § 214.103, subds. 2, 5 (Supp.1993) to matters relating to the complaints filed against her. Under these circumstances, Humenansky's statement that she will suffer "irreparable loss of privacy and autonomy over her private thoughts" is not enough to demonstrate ir-

1. Ala.Code § 34–24–406 (1991); Ariz.Rev.Stat. Ann. § 32–1403 (1992); Ark.Code Ann. § 17–81–305 (Michie Supp.1993); Cal.Bus. & Prof.Code § 820 (West 1990); Colo.Rev.Stat. §§ 12–38–119(2), 120 (1991); Conn.Gen.Stat. § 20–13e(c) (1993); Del.Code Ann. tit. 24, § 1732(b) (Supp. 1992); D.C.Code Ann. § 2–3305.14(b)(1) (1981); Fla.Stat.Ann. § 458.331(1)(s) (West 1991); Ga. Code Ann. § 43–34–37(a)(13)(A) (1994); Ill.Ann. Stat. ch. 225, para. 60/22 (Smith–Hurd Supp. 1994); Ind.Code Ann. § 25–1–9–7 (Burns 1991); Iowa Code Ann. § 148.6(1)(h) (West Supp.1994); Kan.Stat.Ann. § 65–2836(i) (1992); Ky.Rev.Stat. Ann. § 311.599 (Michie/Bobbs–Merrill Supp. 1994); La.Rev.Stat.Ann. § 37:2356(H) (West 1988); Me.Rev.Stat.Ann. tit. 32, § 3286 (West Supp.1994); Md.Code Ann., Health Occ. § 14–402 (1991); Mass.Ann.Laws ch. 112, § 5H (Law Co-op.1991); Mich.Comp.Laws Ann.

§ 333.16236 (West Supp.1994); Miss.Code Ann. § 73–23–59(3) (1993); Mo.Ann.Stat. § 334.100.2(25)(b) (Vernon Supp.1994); Neb. Rev.Stat. § 71–161.13 (1992); Nev.Rev.Stat. § 630.318 (1991); N.M.Stat.Ann. §§ 61–7–4, 61–7–5 (Michie 1993); N.Y.Pub.Health Law § 230(7) (McKinney 1990); N.C.Gen.Stat. § 90–14(a)(5) (1994); N.D.Cent.Code § 43–17.1–06(3) (1993); Or.Rev.Stat. § 677.420 (1993); Pa.Stat. Ann. tit. 63, § 422.41(5) (1994); S.C.Code Ann. § 40–47–200(I) (Law.Co-op.1993); Tenn.Code Ann. § 63–6–214(c) (1994); Tex.Rev.Civ.Stat. Ann. art. 4495b, § 3.08(16) (West 1994); Utah Code Ann. § 58–12–35(3)(b) (1994); Vt.Stat.Ann. tit. 26, § 1353(a)(10) (1994); Va.Code Ann. § 54.1–2915(B) (Michie 1991); Wash.Rev.Code § 18.130.170 (1994); W.Va.Code § 30–3–14(f) (1993); Wis.Stat.Ann. § 448.02(3)(a) (West 1988); Wyo.Stat. § 33–26–403 (1987).

reparable harm and support her claim for injunctive relief. We cannot say that the trial court abused its discretion by denying Humenansky's request for temporary injunctive relief.

## II.

One who challenges the constitutionality of a statute must overcome every presumption in favor of its constitutionality. *Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn.1979); *see* Minn.Stat. § 645.17(3) (1992) (courts presume the legislature did not intend to violate the constitution of the United States or of this state). An appellate court's power to declare a statute unconstitutional is to be exercised only when absolutely necessary and then with extreme caution. *In re Haggerty,* 448 N.W.2d 363, 364 (Minn. 1989). We are not bound by the trial court's conclusions about a statute's constitutionality. *In re Blilie,* 494 N.W.2d 877, 881 (Minn. 1993).

Humenansky seeks a declaration that Minn.Stat. § 147.091, subd. 6(a) violates the Minnesota and the United States Constitutions. Humenansky asserts that the statute, on its face, is unconstitutionally vague. She also argues that the statute, as applied, violates her rights under the Fourth, Fifth, Ninth and Fourteenth Amendments. U.S. Const. amends. IV, V, IX, XIV; *see also* Minn. Const. art. I, §§ 7, 10, 16 (freedom from unreasonable search and seizure, right to due process of law, and privacy rights).

### A. Vagueness

A statute is void due to vagueness if it defines the forbidden or required act or acts in terms so vague that individuals must guess at its meaning, or it defines an act in a manner that encourages arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *Baggett v. Bullitt,* 377 U.S. 360, 367, 84 S.Ct. 1316, 1320, 12 L.Ed.2d 377 (1964); *State v. Newstrom,* 371 N.W.2d 525, 528 (Minn.1985). A statute should not be invalidated as vague merely because it is possible to imagine some difficulty in determining whether certain marginal fact situations fall within its language. *United States*

*v. National Dairy Prods. Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963).

Humenansky does not claim the statute in question invites arbitrary and discriminatory enforcement. Rather she argues the statute fails to define "mental condition" and permits the board to focus on her "mental condition" rather than her "conduct" in violation of the Americans With Disabilities Act, 42 U.S.C.A. §§ 12101–12213 (West Supp.1994). But Minn.Stat. § 147.091, subd. 1(*l*) (1992) authorizes licensure action in response to specific conduct; the central inquiry is whether the physician can practice medicine with reasonable skill and safety to patients. Humenansky's mental condition is only relevant if it precludes skillful and safe practice.

In deciding whether the term "mental condition" renders the statute unconstitutional, we are guided by the well-settled rule that a statute, if it can be made constitutionally definite by reasonable construction, must be given that construction. *United States v. Harriss,* 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954); *see In re Blodgett,* 510 N.W.2d 910, 913 (Minn.1994) (noting that psychopathic personality statute has been narrowly construed and holding it is not void for vagueness), *cert. denied,* —— U.S. ——, 115 S.Ct. 146, 130 L.Ed.2d 86 (1994). Words of a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary. Minn.Stat. § 645.08(1) (1992); *Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975). An undefined word or phrase renders a statute constitutionally infirm only when the meaning of that word or phrase is neither commonly understood nor established by judicial construction. Minn.Stat. § 645.08(1).

The language of Minn.Stat. § 147.091, subd. 1 is sufficiently clear. Section 147.091, subd. 1(*l*) prohibits physicians from practicing who, due to a mental or physical condition, demonstrate an inability to practice with reasonable skill and safety to patients. *See In re Gillard,* 271 N.W.2d 785, 809 n. 7 (Minn.1978) (constitutionality of "necessarily broad standards of professional conduct" has long been recognized); *Rey-*

*burn v. Minnesota State Bd. of Optometry,* 247 Minn. 520, 525, 78 N.W.2d 351, 355 (1956) (statute empowering board to revoke license of physician for "unprofessional conduct" is not void for vagueness). Although the legislature could have lessened the possibility of confusion by including a definition for the term "mental condition," its failure to do so does not render Minn.Stat. § 147.091 constitutionally infirm.

### B. Search and Seizure

 Both the United States and Minnesota Constitutions guarantee an individual the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. These protections apply to intrusions that are part of criminal and civil proceedings. *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978). The Fourth Amendment, however, does not prohibit all searches and seizures. Rather, it bars only those "intrusions which are not justified in the circumstances, or which are made in an improper manner." *Schmerber v. California,* 384 U.S. 757, 768, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966).

 Humenansky argues the board-ordered examination constitutes an unreasonable search and seizure. The totality of the circumstances, however, shows otherwise. Before the board ordered the examination, it made a probable cause finding that Humenansky's practice was adversely affected by a mental or physical condition. The board minimized the intrusiveness of the examination by scheduling it to take place in the professional medical environment at Abbott Northwestern Hospital. Because Humenansky can refuse to participate in any part of the examination, no coercion is present. Further, Humenansky is deemed to have consented to such an examination as a condition of licensure. *Cf. State, Dep't of Pub. Safety v. Wiehle,* 287 N.W.2d 416, 418 (Minn. 1979) (a driver of a motor vehicle is deemed to have consented to alcohol concentration testing under Minn.Stat. § 169.123, subd. 2(a)). Under these circumstances, there is no improper or unjustified intrusion. *See National Treasury Employees Union v. Von*

*Raab,* 489 U.S. 656, 677, 109 S.Ct. 1384, 1396–97, 103 L.Ed.2d 685 (1989) (holding suspicionless drug testing of employees applying for promotion to positions involving interdiction of illegal drugs or requiring them to carry firearms reasonable under Fourth Amendment); *United States v. Martinez–Fuerte,* 428 U.S. 543, 554, 96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116 (1976) (holding routine highway checkpoints reasonable under Fourth Amendment).

### C. Due Process

 Procedural due process protections restrain government action which deprives individuals of "liberty" or "property" interests within the meaning of the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Minnesota Constitution. *See Davis v. Commissioner of Pub. Safety,* 517 N.W.2d 901, 904 (Minn.1994) (due process guarantees are same under both state and federal constitutions); *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988) (same). These protections include reasonable notice, a timely opportunity for a hearing, the right to be represented by counsel, an opportunity to present evidence and argument, the right to an impartial decisionmaker, and the right to a reasonable decision based solely on the record. *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). Full due process requirements, however, do not attach to a general fact-finding investigation conducted by an agency. *Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1515, 4 L.Ed.2d 1307 (1960). In addition, not every protectable interest requires a hearing before the government can interfere with the interest. *See, e.g., Board of Curators of Univ. of Mo. v. Horowitz,* 435 U.S. 78, 90, 98 S.Ct. 948, 955, 55 L.Ed.2d 124 (1978) (academic dismissal); *Dixon v. Love,* 431 U.S. 105, 115, 97 S.Ct. 1723, 1729, 52 L.Ed.2d 172 (1977) (summary suspension of drivers' license); *Mathews v. Eldridge,* 424 U.S. 319, 340, 96 S.Ct. 893, 905, 47 L.Ed.2d 18 (1976) (termination of disability benefits); *Baker v. Baker,* 494 N.W.2d 282, 288 (Minn.1992) (ex parte temporary custody order).

Humenansky argues that Minn.Stat. § 147.091, subd. 6 is the "antithesis" of due process and that the state cannot force a citizen to waive valuable constitutional rights as a condition of employment. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568–70, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968) (states may not require teachers to relinquish First Amendment rights as a condition of employment). In any due process case, we use a two-step analysis. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). The first inquiry is whether a protected liberty or property interest is implicated. *Id.* at 571, 92 S.Ct. at 2706. The second inquiry requires a weighing of the particular interests involved in order to determine what process is due. *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902; *Goldberg*, 397 U.S. at 263, 90 S.Ct. at 1018.

First, Humenansky's license to practice medicine is not immediately at stake in this investigatory proceeding. A license to practice medicine is a property right deserving constitutional protection, including due process. *See Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) (right to hold specific private employment and follow chosen profession free from unreasonable government interference comes within protections of the due process clause); *Beauchamp v. De Abadia*, 779 F.2d 773, 775 (1st Cir.1985) (physician had a protected interest in his license to practice medicine); *Keney v. Derbyshire*, 718 F.2d 352, 354 (10th Cir.1983) (a license to practice medicine is a property right deserving constitutional protection, including due process); *Padilla v. Minnesota State Bd. of Medical Examiners*, 382 N.W.2d 876, 882 (Minn.App.1986) (doctor's due process rights not violated), *pet. for rev. denied* (Minn. Apr. 24, 1986). The statute's language, however, demonstrates that the examination has an investigatory purpose. Minn.Stat. § 147.091, subd. 6(a). Although discipline may be forthcoming, the board has not yet decided to pursue discipline against Humenansky. The proposed examination is a tool. Later, it may be used by the board to determine whether it will subject Humenansky to formal adjudicatory proceedings. *See* Minn.Stat. § 147.091, subd. 1 (board may impose disciplinary action). Humenansky faces no potential discipline until the board begins formal adjudicatory proceedings.

Our conclusion that Humenansky's protected interest is not implicated at this procedural stage is consistent with opinions from foreign jurisdictions. *See Alexander D. v. State Bd. of Dental Examiners*, 231 Cal. App.3d 92, 282 Cal.Rptr. 201, 204 (1991) (dentist's license to practice is not immediately at stake in an investigatory proceeding regarding his or her fitness to practice); *Smith v. Board of Medical Quality Assurance*, 202 Cal.App.3d 316, 248 Cal.Rptr. 704, 710 (1988) (proceedings to determine whether there is reasonable cause to believe physician is incompetent and order compelling physician to submit to examination do not put physician's license at stake), *pet. for rev. denied* (Cal. Sept. 15, 1988); *Gilmore v. Composite State Bd. of Medical Examiners*, 243 Ga. 415, 254 S.E.2d 365, 366 (1979) (investigation of doctor's fitness to practice medicine does not require procedural protections of due process); *Lepley v. State Dep't of Health Office of Professional Medical Conduct*, 190 A.D.2d 556, 593 N.Y.S.2d 235, 236 (1993) (in investigating whether a physician is mentally unfit to practice, officials are authorized to direct him or her to submit to a psychiatric examination).

Second, even if Humenansky's property interests were at stake, the process provided adequately protects her interests. Due process is a flexible concept and the form of procedural protection varies according to the particular situation. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Humenansky's right to practice medicine is not absolute. It is subject to strict regulation under the state's police power. *See Barsky v. Board of Regents of Univ.*, 347 U.S. 442, 449, 74 S.Ct. 650, 654, 98 L.Ed. 829 (1954) (it is vital part of state's police power to regulate all professions concerned with health); *Graves v. State of Minn.*, 272 U.S. 425, 427, 47 S.Ct. 122, 122, 71 L.Ed. 331 (1926) (state may prescribe that only persons with reasonably necessary qualifications of learning and skill shall practice

medicine or dentistry). When a conflict arises between a physician's right to pursue a medical profession and the state's right to protect its citizenry, the physician's right must yield to the state's power to prescribe reasonable rules and regulations in order to protect the state's people from incompetent and unfit practitioners. *See Colorado State Bd. of Medical Examiners v. District Ct.,* 191 Colo. 158, 551 P.2d 194, 195 (1976) (summary suspension of license authorized where agency has reasonable grounds to believe and finds that the public health, safety or welfare imperatively requires emergency action); *Boedy v. Department of Professional Regulation,* 463 So.2d 215, 217 (Fla.1985) (right to practice medicine is subject to regulation under the state's police power); *Gilmore,* 254 S.E.2d at 365–66 (due process protections do not apply at investigative stage); *In re Polk,* 90 N.J. 550, 449 A.2d 7, 14 (1982) (physician's right to practice his or her profession necessarily is subordinate to a government's interest in its citizen's health and welfare); *Thompson v. Texas State Bd. of Medical Examiners,* 570 S.W.2d 123, 128 (Tex.Civ. App.1978) (right to practice medicine is subordinate to state's police power).

■ The government's interest in protecting the public from unsafe or incompetent practitioners would be severely impacted if every preliminary investigation had to be conducted with full due process protections. *See Larche,* 363 U.S. at 443–44, 80 S.Ct. at 1515 (investigative process would be completely disrupted if investigative proceedings were transformed into trial-like proceedings). Because the board's probable cause determination is subject to review both before and after any disciplinary action and because the physician is entitled to a hearing before any default judgment, the statute does not deny Humenansky due process of law.

### D. Privacy

■ The constitutional right of privacy protects only fundamental rights. *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973); *State v. Gray,* 413 N.W.2d 107, 111 (Minn.1987). Fundamental rights are "[t]hose which have their origin in the express terms of the Constitution or which are necessarily to be implied from those terms." *Gray,* 413 N.W.2d at 111 (quoting Black's Law Dictionary 607 (5th ed. 1979)). Like other constitutional rights, the right to privacy is not absolute and must be balanced against the state's interests. *Price v. Sheppard,* 307 Minn. 250, 257, 239 N.W.2d 905, 910 (1976).

Humenansky argues the statute violates her right to privacy because it invades "her private thoughts, dreams, sexual history, and activity." *See Agerter,* 353 N.W.2d at 913 (right of privacy protects disclosure about intimate private affairs). The state, however, has a great need to protect the public against the risk of harm by physicians who are so impaired that they cannot practice medicine safely. *Kees v. Medical Bd. of Calif.,* 7 Cal.App.4th 1801, 10 Cal.Rptr.2d 112, 119 (1992), *pet. for rev. denied* (Sept. 23, 1992); *see McMaster v. Iowa Bd. of Psychology Examiners,* 509 N.W.2d 754, 759 (Iowa 1993) (privacy of mental health records must be weighed against state's interest in policing mental health professions), *cert. denied,* —— U.S. ——, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994); *Chidester v. Needles,* 353 N.W.2d 849, 853–54 (Iowa 1984) (patients' right to privacy of their medical records outweighed by society's interest in investigation of fraudulent medical practices). We must examine whether the statute's grant of discretion to compel an examination is the least intrusive means of satisfying the government's compelling interest.

■ Minn.Stat. § 147.091, subd. 6 authorizes the board to order a licensed physician whose ability to practice is impaired due to illnesses affecting his or her competency to undergo an examination. The statute does not require mental examination in every situation. *See* Minn.Stat. § 645.44, subd. 15 (1992) ("may" is permissive). We construe this provision to mean that the statute allows a mental examination only if such an examination is the least intrusive means of determining a physician's mental condition. *See* Minn.Stat. § 645.17(3) (courts presume the legislature does not intend to violate the constitutions of the United States or of this state). The investigatory nature of the statutory proceedings, and the statute's protec-

tions of the physician's privacy, bolster the statute's constitutionality. Although examinations designed to elicit information regarding a physician's ability to practice medicine undoubtedly infringe upon some privacy expectations, we do not believe these expectations outweigh the government's compelling interest in the safety of its people. *See Von Raab*, 489 U.S. at 671, 109 S.Ct. at 1393 (upholding suspicionless urine tests of certain employees because of governmental interest in ensuring front-line interdiction personnel are physically fit and have unimpeachable integrity and judgment); *Carroll v. United States*, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925) (upholding search of travelers entering country because of compelling national interest in self-protection).

### DECISION

Because Humenansky failed to show she would suffer any irreparable harm, the trial court properly denied her request for temporary injunctive relief. Minn.Stat. § 147.091, subd. 6(a) (1992) is not unconstitutionally vague and does not deprive Humenansky of any constitutionally protected rights.

**Affirmed.**