## Daniel J. POMRENKE, Relator,

v.

## COMMISSIONER OF COMMERCE, Respondent.

### No. A03–497.

Court of Appeals of Minnesota.

March 2, 2004.

Robert B. Bauer, Severson, Sheldon, Dougherty & Molenda, P.A., Apple Valley, for relator.

Mike Hatch, Attorney General, Michael J. Tostengard, Assistant Attorney General, St. Paul, for respondent.

Considered and decided by STONEBURNER, Judge; KALITOWSKI, Judge; and HALBROOKS, Judge.

## OPINION

KALITOWSKI, Judge.

Relator Daniel Pomrenke challenges the Minnesota Department of Commerce's (Department) order concluding that relator had submitted residential mortgage applications with false and misleading statements and altered title work, in violation of Minn.Stat. § 58.12, subd. 1(b)(2)(i), (iv), (v) (2000) and Minn.Stat. § 58.13, subd. 1(9) (2000), and barring him from engaging in mortgage origination or servicing in the state. On appeal, relator argues: (1) the Department did not have jurisdiction to initiate disciplinary proceedings against him; (2) the Department's order barring him from engaging in mortgage origination or servicing unconstitutionally infringes on his right to earn a living; (3) the Department's actions during discovery prejudiced relator; and (4) the Department's decision is not supported by the evidence.

## FACTS

At all relevant times, relator Daniel Pomrenke worked as a loan officer for Real Estate Funding, Inc. Real Estate Funding is currently licensed with the De-

partment as a mortgage originator. In January 2001, relator submitted two loan applications to Paragon Bank: one loan application for relator and his wife Connie for approximately $63,000 (Pomrenke loan) and a second application for William and Cherilyn Fecho for approximately $57,000 (Fecho loan). Contrary to Paragon Bank's policy, the submitted loan applications were not signed or dated.

The Pomrenke loan application contained many false statements: (1) the application listed Real Estate Funding owner and president Steven Watts as a "face-to-face" interviewer, but Watts told Department senior investigator Cheryl Costello that he was in Florida at the time the application was submitted, and relator had completed the application; (2) the application stated that Pomrenke and his wife did not have any dependents; in fact, they have one child; (3) the application stated that relator had been working the past four years at Homestar USA as a manager for Remax; relator provided a check stub from Homestar as verification of his employment; but relator was not and has never been employed at Homestar and is not licensed as a real estate agent; and (4) the application stated that relator's wife had been working at Sterling Optical as an optometrist for several years; but relator's wife is not an optometrist and is currently a stay-at-home mother.

The Fecho loan also contained several false statements. The application stated that Fecho had been working the past several years at PFG, Inc. as a chief estimator for construction. But Fecho worked with relator at Real Estate Funding as a receptionist. In addition, the phone number given for PFG, Inc. was the same number given for Homestar USA on the Pomrenke loan application. The administrative law judge (ALJ) and the De-partment determined that no entity by the name of PFG, Inc. exists in Minnesota.

The Pomrenke and Fecho loans were also submitted to Paragon Bank with altered title work. At the time the loan applications were submitted, the Pomrenke and Fecho properties were each encumbered with two mortgages. But when the title work was submitted to Paragon Bank, the second mortgages were either omitted or listed as paid, giving Paragon Bank the impression that it was in a second, instead of a third, lien position. Paragon Bank vice president Michael Hart testified that he spoke to relator about the situation, and relator indicated that he had directed a Colonial Title employee to delete the second mortgages off of the title work. Relator told Hart that he should not have directed the employee to delete the mortgages, and that he would rectify the situation. When Paragon Bank discovered the altered documents, it demanded the Pomrenkes and Fechos to immediately pay the loans in full.

In April 2001, Hart filed a "suspicious activity" complaint against relator with the Department and other agencies. Costello investigated the complaint and interviewed relator, Watts, and a Colonial Title employee. The parties failed to resolve the matter informally, and on April 8, 2002, the Department served on relator a notice of and order for hearing, notice of prehearing conference, and statement of charges alleging: (1) relator had demonstrated he was untrustworthy, financially irresponsible, or otherwise incompetent or unqualified to act as a mortgage loan originator, in violation of Minn.Stat. § 45.027, subd. 7(4) (2000) and Minn.Stat. § 58.12, subd. 1(b)(2)(v) (2000); (2) relator had engaged in fraudulent, deceptive or dishonest acts, in violation of Minn.Stat. § 58.12, subd. 1(b)(2)(iv); and (3) relator had made false, deceptive or misleading statements or rep-

resentations in connection with a residential loan application, in violation Minn.Stat. § 58.13, subd. 1(9) (2000). Pursuant to Minn.Stat. § 45.027, subds. 6, 7 (2000), the Department ordered relator to appear at a scheduled hearing before an ALJ.

In a letter dated July 17, 2002, the ALJ instructed the parties that: (1) they were required to exchange written exhibits and final witness lists at least one week before the hearing; (2) the Department was required to provide its file to relator within two days; (3) motions to dismiss needed to be filed by a certain time; and (4) the discovery deadline was September 10, 2002. Relator subsequently moved to dismiss, but the ALJ denied his motion, concluding that the Department had jurisdiction over relator, and discovery proceeded.

On August 20, 2002, the Department sent a request for admissions to relator, erroneously directing Joseph Csedo, instead of relator, to make admissions. Relator subsequently informed the Department that he would not be responding to the request for admissions because it was directed at Csedo, and in the event the Department correctly addressed the request to him, he would invoke his Fifth Amendment rights. On August 22, 2002, relator sent the Department discovery requests, and on September 17, the Department sent relator a list of the exhibits and witnesses it intended to present at the hearing. The exhibits included the Pomrenke loan application, the Fecho loan application, an affidavit from the Minnesota Board of Optometry, and the Department's request for admissions. The witnesses included Hart and Costello. Relator moved to exclude the Department's witnesses and dismiss the charges, arguing that the Department's disclosure of exhibits and witnesses was not timely. The ALJ did not respond to relator's motion prior to the hearing.

A hearing was held before the ALJ on September 24, 2002. Prior to the admission of witness testimony, relator argued that he was prejudiced by the Department's failure to timely disclose and identify witnesses and exhibits, claiming that the Department was required to respond within ten days of his discovery request. The ALJ agreed with relator that the Department should have disclosed its witnesses and exhibits so that relator received them at least one week before the hearing, pursuant to administrative rules. But although the ALJ determined that the Department should have responded to relator's discovery request by September 10, he concluded that relator had not been sufficiently prejudiced to justify a dismissal.

After the ALJ ruled on the discovery issues, the Department presented the testimony of Hart and Costello. Relator thoroughly cross-examined Hart, but in the course of cross-examining Costello, it became clear that the Department had not given relator its entire file. The ALJ ordered a continuance for relator to obtain and review the entire file and scheduled another hearing at a later date.

The Department delivered its entire file to relator on October 7, 2002. In addition, relator deposed Costello on October 30, 2002. On November 6, 2002, a second hearing was held before the same ALJ. Relator resumed his earlier cross-examination of Costello, but did not recall Hart to testify. And relator did not present the testimony of any additional witnesses.

On December 20, 2002, the ALJ filed his findings of fact, conclusions, and recommendation. The ALJ: (1) found that relator had submitted the Pomrenke and Fecho loan applications, made multiple misrepresentations in the applications, and admitted to Hart that he had altered the title work; (2) determined that the De-

partment had jurisdiction over relator, that relator was given proper and timely notice, and that the Department had complied with all relevant substantive and procedural requirements; (3) determined that at all relevant times, relator was employed as a loan officer for a mortgage originator; (4) concluded that while relator was exempt from the licensing requirements of chapter 58, he was subject to all other provisions of chapter 58; (5) concluded that relator had engaged in fraudulent, deceptive, or dishonest acts by preparing and submitting residential mortgage loan applications containing false, deceptive, or misleading statements; and (6) recommended that the Department discipline relator.

The Department's assistant commissioner adopted the ALJ's findings in their entirety in an order dated April 10, 2003. The Department concluded that relator had violated Minn.Stat. § 58.12, subd. 1(b)(2)(i), (iv), (v), and Minn.Stat. § 58.13, subd. 1(9). Based on these violations, the Department barred relator from engaging in mortgage origination or servicing in the state. This appeal followed.

## ISSUES

1. Did the Department have jurisdiction to initiate disciplinary proceedings against relator?

2. Did the Department's order barring relator from engaging in mortgage origination or servicing unconstitutionally infringe on relator's right to earn a living?

3. Did the Department's actions during discovery prejudice relator?

4. Is the Department's decision supported by the evidence?

## ANALYSIS

In reviewing an agency's decision in a contested case, this court may reverse or modify the decision .if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are in excess of the agency's statutory authority or jurisdiction. Minn.Stat. § 14.69 (2000).

## I.

■ Relator argues that the Department did not have jurisdiction to pursue disciplinary proceedings against him. We disagree. In 1998, the legislature enacted the Minnesota Residential Originator and Servicer Licensing Act (Act) to regulate the residential mortgage origination and servicing industry. *See* Minn.Stat. §§ 58.01–58.17 (2000). Under the Act, mortgage originators and servicers are required to obtain a license from the Department. Minn.Stat. § 58.04. Certain individuals and entities are exempt from the licensing requirement, including employees of licensed mortgage originators and/or servicers. Minn.Stat. § 58.04, subds. 1(b)(1), 2(b). But exempt individuals are still bound by the other provisions of the Act. Minn.Stat. § 58.05. While there is no caselaw interpreting Minn.Stat. §§ 58.01–58.17, we conclude that the plain language of the statute grants the Department jurisdiction to initiate disciplinary proceedings against relator. Because relator was an employee of Real Estate Funding, a licensed mortgage originator, relator was exempt from the licensing requirement. But relator was still subject to the other provisions of the Act.

Despite the plain language of the Act, relator argues that the Department did not have jurisdiction over him because he was not a licensee or a license applicant. Specifically, relator argues that under Minn. Stat. § 45.027, subds. 6, 7 (2000), the Department is authorized to pursue disciplinary proceedings only against a licensee or a license applicant. But relator fails to

acknowledge that the Department charged him with violations of Minn.Stat. §§ 58.01–58.17.

Further, Minn.Stat. § 45.027, subds. 6, 7, grant the Department jurisdiction over relator. Minn.Stat. § 45.027, subd. 6, provides that the commissioner of the Department can impose a civil penalty "upon a person who violates any law, rule, or order related to the duties and responsibilities entrusted to the commissioner unless a different penalty is specified." And while Minn.Stat. § 45.027, subd. 7, is titled "Actions against licensees," it provides in relevant part: "In addition to any other actions authorized by this section, the commissioner may, by order, deny, suspend, or revoke the *authority* or license of *a person subject to the duties and responsibilities entrusted to the commissioner*, as described under section 45.011, subdivision 4, or censure that person ... [under certain conditions]." (Emphasis added.) "Duties and responsibilities entrusted to the commissioner" include administration of several chapters of Minnesota statutes, including chapters 45 and 58. Minn.Stat. § 45.011 (2000). Therefore, we conclude that the Department had jurisdiction over relator under Minn.Stat. §§ 58.01–58.17 and Minn.Stat. § 45.027, subds. 6, 7.

## II.

Relator contends that Minn.Stat. § 58.12, as applied to him, is unconstitutional. A reviewing court presumes that Minnesota statutes are constitutional. Minn.Stat. § 645.17(3) (2000); *Associated Builders & Contractors v. Ventura*, 610 N.W.2d 293, 308 (Minn.2000). And the party challenging a statute has the burden of establishing a constitutional violation beyond a reasonable doubt. *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989).

■ Relator argues that the Department's order barring him from engaging in mortgage origination or servicing unconstitutionally infringes upon his property right to earn a living. We disagree. Courts have recognized that an individual has a property interest in pursuing private employment. *See Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959) (stating that an individual has a property interest in holding private employment and following a chosen profession free from unreasonable government interference); *Brooks v. Int'l Bhd. of Boilermakers*, 262 Minn. 253, 263, 114 N.W.2d 647, 654 (1962) (noting that an individual's occupation is property within the meaning of the law and entitled to protection as such); *State ex rel. Pavlik v. Johannes*, 194 Minn. 10, 19, 259 N.W. 537, 540–41 (1935) (stating that the right to earn one's livelihood in any legitimate business is a right of property, and any unlawful or unreasonable interference with that right is a restriction of the liberty of the citizen as guaranteed by the Constitution); *Fosselman v. Comm'r of Human Servs.*, 612 N.W.2d 456, 461 (Minn.App.2000) (finding that registered nurses had property interest in working in positions that involved direct contact with patients); *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 566 (Minn.App.1994) (stating that a license to practice medicine is a property right deserving constitutional protection), *review denied* (Minn. Feb. 14, 1995).

But courts have also recognized that this property interest is not absolute. *Minn. Ass'n of Pub. Schs. v. Hanson*, 287 Minn. 415, 424, 178 N.W.2d 846, 853 (1970) (concluding that a teacher's contractual right acquired under a tenure statute was "subject to a proper exercise of the police power of the state—the power of the state to impose restraints upon private rights when necessary for the betterment of the general welfare"); *Humenansky*, 525

N.W.2d at 566 (stating that appellant's right to practice medicine was subject to the strict regulation under the state's police power).

Further, before a reviewing court can hold that an exercise of the police power, such as the enactment of the Minnesota Residential Mortgage Originator and Servicer Licensing Act, is unconstitutional, it must find that the exercise has no substantial relationship to public health, safety, morals, or general welfare. *County of Freeborn v. Claussen,* 295 Minn. 96, 100–01, 203 N.W.2d 323, 326 (1972). The legislature primarily determines what best furthers public welfare. *Id.* Where an economic regulation is involved, due process only demands that it: (1) serves to promote a public purpose; (2) not be an unreasonable, arbitrary, or capricious interference; and (3) the means chosen are rationally related to the public purpose sought to be served. *Inv. Co. Inst. v. Hatch,* 477 N.W.2d 747, 749 (Minn.App. 1991).

Here, the Department barred relator from engaging in mortgage origination and servicing after concluding that relator violated the Act by preparing and submitting two loan applications that contained false, deceptive, and/or misleading statements and directing a title company employee to falsify title work. *See* Minn.Stat. § 58.12, subd. 1(b)(2)(iv), (v), .13, subd. 1(9). The Act authorizes the Department to discipline a "residential mortgage originator, servicer, applicant, or other person, an officer, director, partner, employee, or agent or any person occupying a similar status or performing similar functions, or a person in control of the originator, servicer, application or other person" if the person has violated any provision of the Act and the discipline is in the public interest. Minn.Stat. § 58.12, subd. 1(b)(1), (2). Under the statute, the Department

can: (1) bar a person from engaging in residential mortgage origination or servicing; (2) deny, suspend, or revoke a residential mortgage origination or service license; (3) censure a licensee; (4) impose a civil penalty; or (5) revoke an exemption or certificate of exemption. Minn.Stat. § 58.12, subd. 1(a).

We conclude that the Act is a legitimate exercise of the state's police power. Therefore, the Department's order, issued pursuant to the Act and after relator was given an opportunity to be heard, does not unconstitutionally infringe on relator's right to pursue private employment. Relator's property interest in pursuing employment in the mortgage origination/servicing industry is subject to the economic regulations implemented pursuant to the state's police power.

We reject relator's argument that because he claims never to have been a mortgage originator/servicer, the Department's order unconstitutionally bars him from a *future* occupation. While Costello testified that she did not consider relator a mortgage originator, she also testified that she considered the entity, Real Estate Funding, the mortgage originator. According to Costello, she distinguished the originator/entity from an individual who performs mortgage origination services. More importantly, while Costello may have distinguished between an entity and an individual, the Act does not. Minn.Stat. § 58.02, subd. 19 (defining a residential mortgage originator as "a person," who for actual or expected compensation, solicits, accepts, or offers to solicit or accept, an application for a residential mortgage loan from a borrower, or makes such a loan); Minn. Stat. § 58.02, subd. 20 (defining a residential mortgage servicer as "a person" who engages in servicing a residential mortgage); Minn.Stat. § 58.02, subd. 16 (defining "person" to include a natural person,

as well as various business entities, and the officers, directors, employees, and agents of those entities). Therefore, we conclude that relator was a mortgage originator within the meaning of the Act, exempt from licensure only because he was an employee of a licensed mortgage originator. Thus, the Department's disciplinary action did not improperly bar him from a future occupation.

## III.

■ Appellant claims the Department's order must be reversed because he was prejudiced and denied due process when the Department failed to give relator its entire file within the time prescribed by the ALJ. We disagree. In a letter dated July 17, 2002, the ALJ required the Department to provide its file to relator within two days. The Department gave some of the contents of its file to relator, but at the contested hearing on September 24, 2002, it became clear that the Department had not given relator the entire file. The ALJ granted a continuance for relator to obtain and review the entire Department file. Relator received the entire file on October 7, 2002, which apparently contained 172 new pages. Relator deposed Costello later that month and subpoenaed additional evidence from Paragon Bank. The contested hearing was reconvened on November 6, 2002, and relator used some of the evidence he obtained after the first hearing to cross-examine Costello. The ALJ found relator's claim of prejudice to be without merit because the continuance gave relator sufficient time to examine the missing documents and to prepare effective cross-examinations of the Department's witnesses. We agree and conclude that the 1 1/2 month continuance remedied any potential prejudice that may have resulted from the Department's failure to initially produce its entire investigative file.

Appellant also claims that he was prejudiced and denied due process because the Department failed to disclose its witnesses and exhibits in a timely manner. We disagree. Relator and the Department had disagreed concerning whether the Department was required to respond to relator's discovery request within 10 days, pursuant to Minnesota Rule 1400.6700, subp. 1, or within 30 days under the Minnesota Rules of Civil Procedure. Notwithstanding the disagreement, the Department mailed its exhibit and witness lists to relator one week prior to the hearing. Although the ALJ concluded that the Department should have adhered to the administrative rules rather than the civil procedure rules, the ALJ properly found that relator was not prejudiced because the 1 1/2 month continuance remedied any potential prejudice and gave relator ample time to obtain and review additional information and further prepare his defense.

## IV.

Relator contends that the Department failed to carry its burden in proving the allegations contained in its statement of charges. But based on evidence presented at the hearing, the ALJ and the Department found that relator submitted two loan applications that contained numerous false statements and that relator directed a title company employee to fraudulently alter title work. This court gives great deference to an agency's findings of fact. *Info Tel. Communications, L.L.C. v. Minn. Pub. Utils. Comm'n,* 592 N.W.2d 880, 884 (Minn.App.1999), *review denied* (Minn. July 28, 1999).

■ When an agency acts in a quasi-judicial capacity, an appellate court applies the substantial evidence test on review. *In re Petition of Northern States Power Co.,* 416 N.W.2d 719, 723 (Minn.1987).

Substantial evidence is defined as: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency,* 644 N.W.2d 457, 466 (Minn.2002) (citation omitted). Under the substantial evidence test, the reviewing court evaluates the evidence relied upon by the agency in view of the entire record as submitted. *Cable Communications Bd. v. Nor-West Cable Communications P'ship,* 356 N.W.2d 658, 668 (Minn.1984). If an agency engaged in reasoned decision-making, a reviewing court will affirm, even though it may have reached a different conclusion than the agency. *Id.* at 669.

■ Here, Costello investigated the complaint made against relator. Costello talked with Hart, reviewed the Pomrenke and Fecho loan applications and accompanying documents, and interviewed relator, Watts, and a Colonial Title employee. Costello and Hart testified at the contested hearing. Hart denied that he encouraged or assisted relator in submitting the fraudulent loan applications. Hart also testified that relator admitted to altering the title work and relator promised to rectify the situation. Costello testified that the two loans contained numerous false statements. Relator did not testify on his own behalf and did not present any witnesses of his own. We conclude that the Department's findings of fact and conclusions are supported by substantial evidence.

## DECISION

Because relator violated the Minnesota Residential Originator and Servicer Licensing Act, the Department of Commerce had jurisdiction over relator, even though relator was exempt from the Act's licensure requirement. Further, the Department's order barring relator from engaging in mortgage origination and servicing did not unconstitutionally infringe upon relator's property interest in pursuing private employment. The Department's actions in the proceedings did not prejudice relator; any potential prejudice was remedied by a 1 1/2 month continuance. Finally, substantial evidence in the record supports the Department's findings of fact and conclusions of law.

**Affirmed.**