*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0543**

In the Matter of the Rental Dwelling License
held by Douglas Doty for the Premises at
1068/1072 18th Avenue SE,
Minneapolis, Minnesota.

**Filed February 9, 2015
Affirmed
Johnson, Judge**

Minneapolis City Council

Andrew Larson-Wille, Batten & Beasley, PLLC, Roseville, Minnesota (for relator
Douglas Doty)

Susan L. Segal, Minneapolis City Attorney, Lee C. Wolf, Assistant City Attorney,
Minneapolis, Minnesota (for respondent department)

Considered and decided by Johnson, Presiding Judge; Worke, Judge; and Reyes, Judge.

# UNPUBLISHED OPINION

**JOHNSON**, Judge

The Minneapolis City Council revoked the rental-dwelling license for a duplex apartment building after the owner failed to pay a fine and failed to correct code violations. On certiorari review, the owner argues that his right to due process was violated during the revocation process. We affirm.

# FACTS

This appeal concerns a duplex apartment building associated with the addresses of 1068 and 1070 18th Avenue Southeast, Minneapolis. The duplex is owned by Douglas Doty, who also owns an adjacent duplex apartment building, which is associated with the single address of 1072 18th Avenue Southeast. Doty has held a rental-dwelling license for the 1068-1070 duplex since 1993.

Bryan Starry is an inspector with the Problem Properties Unit of the Housing Inspection Services Division of the Regulatory Services Department of the City of Minneapolis. In August 2012, Starry inspected the 1068-1070 duplex. Starry recorded 16 housing code violations. Three days later, the division sent Doty a notice of ordinance code violations, which detailed the violations and the inspector's comments. Starry re-inspected the 1068-1070 duplex in October 2012, November 2012, and June 2013. Each time he issued a citation for code violations. After each re-inspection, the division imposed a fine.

Cynthia Gagnier, manager of administrative services for the department, later discovered that none of the three outstanding fines for the 1068-1070 duplex had been paid and that the fines had moved to special-assessment status. On August 15, 2013, the division sent Doty a notice of a determination of noncompliance. The notice informed Doty that he had not met the licensing standards in section 244.1910 of the Minneapolis City Ordinance for the following reasons: (1) failure to pay re-inspection fees; (2) failure to pay assessments for administrative citations; (3) "other cause" pursuant to chapter 4, section 16, of the city charter; and (4) failure to pay fines or fees owed to the city. The

notice gave Doty ten days to come into compliance with the rental-licensing standards and warned him that failure to do so may result in the revocation of his rental-dwelling license.

On August 29, 2013, the division sent Doty a notice of revocation of his rental-dwelling license. The notice informed him that both the 1068-1070 duplex and the 1072 duplex failed to meet the rental-licensing standards for the reasons stated in the August 15, 2013 notice. The letter stated, "If you do not appeal this action within 15 days from the date of this notification, the City Council may take action to Revoke your license(s)."

Doty appealed the revocation on September 16, 2013. The Rental Licensing Board of Appeals held a hearing on December 5, 2013. Four witnesses testified for the city: Starry; Gagnier; Adam Harmon, a police officer assigned to the Problem Properties Unit; and Katharine Fournier, the chairperson of the Southeast Como Improvement Association's Livability Committee. Gagnier described the department's reasons for initiating revocation proceedings against Doty. She explained that the "other cause" for revocation reflected the fact that the duplex was a "disturbance to the neighborhood" and a "drain on the City's resources." Fournier testified that the neighborhood association had observed piled-up trash and inadequate maintenance and repairs at the 1068-1070 duplex and that the duplex had had a negative impact on the neighborhood. Doty, through counsel, cross-examined each of the city's witnesses, and he testified on his own behalf. Among other things, Doty testified that he filed for bankruptcy in February 2013 and, for that reason, believed that he was not required to pay the fines. He also argued

3

that the August 2013 notice did not properly notify him of the revocation of the license for the 1072 duplex.

On December 30, 2013, an administrative hearing officer (AHO) issued a written recommendation to the city council that Doty's rental-dwelling license for the 1068-1070 duplex be revoked. The AHO's recommendation was based on only one unpaid fine, the fine that was imposed after the third re-inspection, after Doty's bankruptcy plan was confirmed. The AHO's recommendation also was based on the numerous special assessments and housing-code violations recorded since 1993, including 58 open violations. The AHO recommended that the city council not take action on the 1072 duplex because Doty did not receive proper notice of the violations associated with that duplex.

The matter was referred to the Community Development and Regulatory Services (CD&RS) Committee of the city council. The committee held a hearing in February 2014. Joann Velde, deputy director of the housing inspection services division, stated that there were 58 open violations at the 1068-1070 duplex at that time. Doty's attorney responded by stating that the city had improperly combined violations at the 1072 duplex with violations at the 1068-1070 duplex, apparently because both duplexes are located on the same registered parcel of property. He argued that this error made it impossible to determine the actual number of violations at the 1068-1070 duplex, which was the duplex at issue. Velde disputed the attorney's contention and stated that all of the 58 violations were found at the 1068-1070 duplex. Council Member Frey noted that, even though there was confusion about which violations were associated with which duplex, there was

4

no question that some of the violations were at the 1068-1070 duplex. Council Member Reich stated, "To me, the staff has outlined a very clear pattern that's certainly the underlying basis for their recommendation to revoke, and I would move to uphold their recommendation based on the facts before us." The committee unanimously decided to adopt the AHO's recommendation and to recommend to the city council that the rental-dwelling license for the 1068-1070 duplex be revoked.

On February 21, 2014, the city council unanimously agreed to adopt the committee's recommendation and to revoke the license. Doty challenges the city council's action, a quasi-judicial decision, by way of a writ of certiorari. *See In re Khan*, 804 N.W.2d 132, 136 (Minn. App. 2011).

**D E C I S I O N**

Doty argues that the city violated his right to procedural due process in the course of the proceedings that led to the revocation of his rental-dwelling license. Doty focuses on Velde's statement at the CD&RS Committee hearing that there were 58 open violations at the 1068-1070 duplex. Doty contends that Velde made a misstatement because there were only 14 open violations at the 1068-1070 duplex at the time of the CD&RS Committee hearing and that the other open violations existed at the 1072 duplex. The document on which Doty relies, the August 2012 notice of ordinance code violations, shows 16 violations at the 1068-1070 duplex. The city concedes that there were not 58 open violations at the 1068-1070 duplex at the time of the CD&RS Committee hearing and states that there were 17 open violations at the 1068-1070 duplex at that time. The document on which the city relies shows 16 violations related to the

5

August 2012 inspection and one violation related to "unpaid administrative citations," for a total of 17 violations.

Both the United States Constitution and the Minnesota Constitution provide that no person may be deprived of "life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1; *see also* Minn. Const. art. I, § 7. To determine whether a city has violated a person's right to procedural due process, we conduct a two-step analysis. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). "First, we must identify whether the government deprived the individual of a protected life, liberty, or property interest." *Id.* Second, if such a deprivation has occurred, we must "determine 'whether the procedures followed by the [government] were constitutionally sufficient.'" *Id.* (alteration in original) (quoting *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011)). To determine the constitutional sufficiency of a government's procedures, we rely on the familiar three-factor test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976), which inquires into (1) the nature of the interest, (2) the risk of a deprivation with the procedures that were followed and the procedures that could be followed, and (3) the government's interest and the burdens that would be imposed if additional procedures were required. *Sawh*, 823 N.W.2d at 632 (quoting *Mathews*, 424 U.S. at 335, 96 S. Ct. at 903). To satisfy the *Mathews* test, the procedures must ensure that an individual with a constitutionally protected interest has "an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (quotations omitted). We apply a *de novo* standard of review. *Id.*

In this case, we need not conduct the first step of the *Sawh* analysis because the city concedes that it deprived Doty of a constitutionally protected property interest. Accordingly, we turn to the second step of the *Sawh* analysis, which asks "whether the procedures followed by the government were constitutionally sufficient." *Id.* (quotations omitted). Doty contends that his right to due process was violated because the CD&RS Committee received and considered inaccurate information when Velde made a misstatement concerning the number of open violations at the 1068-1070 duplex. Doty relies on a short excerpt from this court's opinion in *Humenansky v. Minnesota Board of Medical Examiners*, 525 N.W.2d 559 (Minn. App. 1994), *review denied* (Minn. Feb. 14, 1995), where we stated that the right to due process includes, among other things, "the right to a reasonable decision based solely on the record." *Id.* at 565. Doty essentially contends that a misstatement of fact in the revocation proceedings is a *per se* violation of his right to due process.

Doty's contention is not supported by the caselaw. In *Humenansky*, this court cited the United States Supreme Court's opinion in *Goldberg v. Kelly*, 397 U.S. 254, 90 S. Ct. 1011 (1970), as support for the statement on which Doty relies. *Humenansky*, 525 N.W.2d at 565 (citing *Goldberg*, 397 U.S. at 267-68, 90 S. Ct. at 1020). In the cited portion of *Goldberg*, the Supreme Court emphasized that the right to be heard "at a meaningful time and in a meaningful manner," 397 U.S. at 267, 90 S. Ct. at 1020, requires that a person with a constitutionally protected interest have "timely and adequate notice detailing the reasons for a proposed termination," *id.* at 267-68, 90 S. Ct. at 1020, and, in addition, "an effective opportunity to defend by confronting any adverse

7

witnesses and by presenting his own arguments and evidence orally," *id.* at 268, 90 S. Ct. at 1020. The Supreme Court explained that these protections are especially important in cases in which an individual challenges a "proposed termination[] as resting on incorrect or misleading factual premises." *Id.* The Due Process Clause does not guarantee the accuracy of the information on which a deprivation of a property right is based; rather, the Due Process Clause merely guarantees a process by which a person may test the accuracy of that information. *See id.*

In this case, the city provided the constitutionally required process, and Doty received the benefits of that process. He had an opportunity to learn the city's proposed reasons for revoking his rental-dwelling license. He had an opportunity to confront the city's witnesses and to present his own evidence and arguments at the hearing before the city's Rental Licensing Board of Appeals, and he did so, with the assistance of counsel. He had an opportunity to present his case to the CD&RS Committee, and he did so, with the assistance of counsel. Specifically, Doty was allowed to address Velde's statement concerning the number of code violations at the 1068-1070 duplex. Throughout this sequence of events, the city provided Doty with an extensive set of procedures by which he could respond to the city's proposed action and challenge the information on which the proposed action was based. In short, the city's procedures fulfilled Doty's right to due process.

Thus, the city did not err when it revoked Doty's rental-dwelling license.

**Affirmed.**

8